STATE of Minnesota, Appellant/Cross–
Respondent,

v.

George Cornelius WATKINS,
Respondent/Cross–
Appellant.

No. A11–1793.

Supreme Court of Minnesota.

Dec. 4, 2013.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for appellant/cross-respondent.

Cathryn Middlebrook, Interim Chief Appellate Public Defender, Steven P. Russett, Assistant State Public Defender, Saint Paul, MN, for respondent/cross-appellant.

## OPINION

DIETZEN, Justice.

Hennepin County District Court issued a domestic abuse no-contact order (DANCO) that prohibited respondent George Cornelius Watkins from having contact with his girlfriend. After Watkins allegedly contacted his girlfriend on two separate occasions, the State charged him pursuant to Minn.Stat. § 629.75, subd. 2(d)(1) (2012), with felony violations of the DANCO. A Hennepin County jury found Watkins guilty as charged. The district court entered judgment of conviction, imposed an aggregate sentence of 44 months and a day in prison, and issued a 5–year DANCO. The court of appeals reversed and remanded for a new trial, holding as a matter of law that Watkins' substantial rights were affected by the district court's failure to instruct the jury on the "knowingly" element of the charged offense. *State v. Watkins*, 820 N.W.2d 264, 269 (Minn.App.2012). We conclude that the court of appeals misconstrued existing case law when it held that, as a matter of law, the failure to instruct on an element of the charged offense affects a defendant's substantial rights. Based upon our review of the record, we conclude that the failure to instruct on the "knowingly" element of the charged offense was trial error that affected Watkins' substantial rights. We therefore affirm the result reached by the court of appeals, though on different grounds.

Watkins and his girlfriend met in 2005 and had an on-again, off-again romantic relationship. As a result of an October 2010 incident, Watkins was charged by complaint with several offenses, including felony domestic assault in violation of

Minn.Stat. § 609.2242, subd. 4 (2012). At the first appearance, the district court set bail and conditions of release, including that Watkins have no contact with his girlfriend. The district court issued, without objection, a DANCO under Minn.Stat. § 629.75 (2012). The DANCO identified the protected person, but misspelled her last name by one letter and incorrectly listed her date of birth. The DANCO required that Watkins "have no contact directly, indirectly or through others, in person, by telephone, in writing, electronically or by any other means with the protected person(s) named above."

Watkins subsequently contacted his girlfriend on two occasions. On October 30, 2010, Watkins telephoned his girlfriend from jail and the two had a conversation that jail personnel recorded. Additionally, sometime between February 7 and February 14, 2011, Watkins sent a Valentine's Day card to his girlfriend's home. Watkins was subsequently charged by complaint with two counts of felony violation of a DANCO, Minn.Stat. § 629.75, subd. 2(d)(1). Watkins pleaded not guilty, and the case proceeded to trial.

At trial, the State presented evidence consistent with the facts described above. Watkins admitted that he had received a copy of the DANCO and later contacted his girlfriend on the dates alleged in the complaint. Watkins testified, however, that he did not know his actions had violated the DANCO. Specifically, Watkins stated that he did not know he was contacting the protected person named in the DANCO because the last name and date of birth of the protected person were not the same last name and same date of birth of his girlfriend. Watkins also testified that he sent the card to his girlfriend in response to a letter that she sent to him, but denied that the DANCO prevented him from contacting her if she first contacted him.

After closing arguments, the district court instructed the jury, in part, as follows:

> The statutes of Minnesota provide that whoever violates a domestic abuse no-contact order granted pursuant to the Domestic Abuse Act or similar law of another state and knows of the existence of the order is guilty of a crime.
>
> . . . .
>
> The elements of violation of a domestic abuse no-contact order are, first, there was an existing court domestic abuse no-contact order.
>
> Second, the defendant violated a term or condition of the order.
>
> Third, the defendant knew of the existence of the order.
>
> Fourth, the defendant's act took place on or about October 30, 2010, in Hennepin County.
>
> If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

Watkins did not object to the instruction. The jury found Watkins guilty of both counts, and the district court entered judgments of conviction and imposed an aggregate sentence of 44 months and a day in prison. The court also imposed a 5-year DANCO.

The court of appeals reversed the convictions and remanded for a new trial, concluding that the court's failure to instruct the jury on the "knowingly" element of the DANCO statute was plain error that as a matter of law affected Watkins' substantial rights. *Watkins*, 820 N.W.2d at 267–69. In reaching that conclusion, the court cited *State v. Mahkuk*, 736 N.W.2d

675 (Minn.2007), and *State v. Hall,* 722 N.W.2d 472 (Minn.2006), for the proposition that an omission of an element of a charged offense from the jury instructions "as a matter of law" affects a party's substantial rights. *Watkins,* 820 N.W.2d at 268–69. We granted the State's petition for review.[1]

## I.

The question before us is whether the district court's error in failing to instruct the jury on the then-required "knowingly" element of the charged offense entitles Watkins to a new trial.[2] To answer the question presented, we will first address whether the error is structural or trial error, and then we will apply the correct standard to review the error.

Watkins argues that a failure to instruct the jury on an element of the charged offense is a structural error, and the State argues that such a failure is a trial error. We conclude that the error is subject to review as a trial error, not as a structural error.

■ Generally, there are two types of error: structural error and trial error. *State v. Kuhlmann,* 806 N.W.2d 844, 851 (Minn.2011). On the one hand, "[s]tructural errors are 'defects in the constitution of the trial mechanism.'" *Id.* (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Such

errors affect the entire trial from beginning to end and undermine the structural integrity of the criminal tribunal itself. *Id.* Only a narrow class of errors is structural. *See, e.g., Sullivan v. Louisiana,* 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (constitutionally deficient reasonable-doubt jury instruction); *Waller v. Georgia,* 467 U.S. 39, 49–50, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of the right to a public trial); *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of the right to self-representation at trial); *Gideon v. Wainwright,* 372 U.S. 335, 345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (total deprivation of the right to counsel at trial); *Tumey v. Ohio,* 273 U.S. 510, 531–32, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (deprivation of the right to an impartial judge); *State v. Logan,* 535 N.W.2d 320, 324 (Minn.1995) (failure to dismiss a biased juror for cause).

■ On the other hand, a trial error is an error that occurs during the presentation of the case to the jury and which may be assessed to determine whether the error was prejudicial. *Kuhlmann,* 806 N.W.2d at 851 (citing *Fulminante,* 499 U.S. at 307–08, 111 S.Ct. 1246). Most errors are trial errors, which are reviewed under a prejudicial-impact analysis to determine whether they require reversal and

---

**1.** We granted Watkins' cross-petition on the issue of the district court's sentencing authority. Watkins argues that the district court's imposition of a 5–year DANCO as part of his sentence was unlawful. In a case involving a separate prosecution against Watkins, the court of appeals vacated the DANCO that was issued, holding that the district court lacked authority to impose a DANCO as part of an executed prison sentence. *See State v. Watkins,* No. A11–1324, 2012 WL 3155948, at *5 (Minn.App. Aug. 6, 2012), *rev. denied* (Minn. Oct. 24, 2012). Consequently, Watkins' challenge to the DANCO is moot.

**2.** At the time of the alleged offenses in this case, section 629.75, subdivision 2(d)(1) provided that it was a felony "if the person knowingly violates this subdivision: (1) within ten years of the first of two or more previous qualified domestic violence-related offense convictions." After the alleged offenses occurred in this case, the Legislature amended Minn.Stat. § 629.75, subd. 2(d)(1), removing the word "knowingly." Act of May 8, 2013, ch. 47, § 5, 2013 Minn.Laws 203, 207–08.

a new trial. *See, e.g., Carella v. California*, 491 U.S. 263, 266, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (per curiam) (jury instruction containing erroneous conclusive presumption); *Crane v. Kentucky*, 476 U.S. 683, 691, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (exclusion of the defendant's testimony regarding the circumstances of his confession); *State v. Finnegan*, 784 N.W.2d 243, 251 n. 6 (Minn.2010) (continuing the trial in the defendant's absence).

■ The United States Supreme Court considered the difference between structural error and trial error with respect to a jury instruction that omitted an element of the charged offense in *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In *Neder*, the Supreme Court considered whether the objected-to omission of the "materiality" element of the charged offense in a jury instruction should be examined as structural or trial error. *Id.* at 8, 119 S.Ct. 1827. The Court observed that most constitutional errors are trial error, and structural error resulting in automatic reversal occurs only in a "very limited class of cases." *Id.* (citation omitted) (internal quotation marks omitted). The Court held that the harmless-error analysis applies to cases involving improper jury instructions that omit an element of the charged offense. *Id.* at 15, 119 S.Ct. 1827. The Court reasoned that a jury instruction that omits an element of the offense "differs markedly" from a structural error, which is a defect that "infect[s] the entire trial process" and "necessarily render[s] a trial fundamentally unfair." *Id.* at 8, 119 S.Ct. 1827 (citations omitted) (internal quotation marks omitted). Specifically, an instruction that omits an element of the offense does not necessarily render a criminal trial unfair or the result of the trial unreasonable. *Id.* at 9, 119 S.Ct. 1827.

■ Although we have never expressly adopted the reasoning of *Neder*, we implicitly held that the erroneous omission of an element of the charged offense from the jury instruction is subject to review as a trial error in *State v. Milton*, 821 N.W.2d 789, 808–09 (Minn.2012), and *Mahkuk*, 736 N.W.2d at 683. In *Milton*, the district court's jury instructions erroneously omitted the "intentionally aiding" element of the charged offense. 821 N.W.2d at 808. Concluding that the defendant failed to prove that there was a reasonable likelihood the jury's verdict would have been different had the jury instructions included the omitted element, we affirmed the conviction. *Id.* at 809–10. Similarly, in *Mahkuk*, we considered, among other things, whether the district court erred in giving an aiding and abetting liability instruction that indicated that the jury needed only to "consider" the defendant's knowledge and intent, and whether language regarding his "presence" at the scene of the crime was erroneous. 736 N.W.2d at 682–83. After concluding that the jury instruction effectively omitted the "knowledge and intent" element of the charged offense, we explained that our conclusion did "not lead automatically to a new trial." *Id.* at 683. Instead, the harmless-error standard controlled our analysis. *Id.* Based on the specific facts in *Mahkuk*, we were unable to say that the errors "were harmless beyond a reasonable doubt," and therefore we reversed Mahkuk's convictions and remanded for a new trial. *Id.*

Watkins contends that in *State v. Moore*, 699 N.W.2d 733 (Minn.2005), we held that the harmless-error standard does not apply to an erroneous omission of an element of the charged offense from a jury instruction, thereby implicitly rejecting the reasoning of *Neder*. Watkins' argument is without merit. In *Moore*, we considered whether the district court erred in effectively instructing the jury that the defini-

tion of "great bodily harm" was established in a first-degree assault case. 699 N.W.2d at 737. We determined that the district court erred because the instruction essentially constituted a directed verdict. *Id.* In reviewing that error, we then stated that harmless-error review does not apply when the defendant is deprived of the "right to have the jury determine that every element of the charged offense has been established." *Id.* at 737–38 (citing *Rose v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (stating in dicta that "harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury")). But what occurred in *Moore*—a directed verdict on an element of the offense—is markedly different from the omission of an element of the offense. Unlike the omission of an element, the instructional error in *Moore* created a conclusive presumption that the element was established.

■ We conclude that the failure to instruct the jury on an element of the charged offense is subject to review as a trial error, not as a structural error. Our conclusion is supported by *Neder* and our recent decisions in *Milton* and *Mahkuk.* The omission of the "knowingly" element was not a defect in the constitution of the trial mechanism that undermined the structural integrity of the criminal tribunal itself. Indeed, Watkins was tried before an impartial judge, had the assistance of counsel, and an impartial jury was empaneled that was properly instructed as to the burden of proof and instructed to consider all of the evidence and argument with respect to Watkins' defense. Because the omission of the "knowingly" element occurred during the jury trial and may be assessed in the context of other evidence presented to determine whether it was prejudicial, the omission in the jury instruction is subject to review as trial error.

## II.

Having determined that the failure to instruct the jury on an element of a charged offense is reviewed as trial error, we next examine whether the district court's failure to instruct the jury on the "knowingly" element of Minn.Stat. § 629.75, subd. 2(d) was plain error that affected Watkins' substantial rights. The State argues that the court of appeals erred by concluding the omission was plain error that as a matter of law affected Watkins' substantial rights.

■ Watkins did not object to the jury instruction at the time of trial. Previously, we have held that an unobjected-to jury instruction is subject to plain-error analysis.[3] *Milton*, 821 N.W.2d at 809–10 & n. 14 (applying plain-error analysis to determine whether the district court's fail-

---

**3.** The standard of review for trial error depends on whether an objection is made at the time of trial and whether the error affects the defendant's constitutional rights. Specifically, when a defendant timely objects to a jury instruction, we apply the harmless-error analysis to determine whether the error requires reversal. *See State v. Koppi*, 798 N.W.2d 358, 364 (Minn.2011); Minn.R.Crim. P. 31.01. Under the harmless-error analysis, a defendant who alleges an error that does not implicate a constitutional right will be granted a new trial if the defendant proves that there is a "reasonable possibility" that the error "sig-nificantly affected the verdict." *State v. Matthews*, 800 N.W.2d 629, 633 (Minn.2011) (citations omitted) (internal quotations omitted). In contrast, when a defendant alleges error that implicates a constitutional right, the defendant is entitled to a new trial unless it is determined that, "beyond a reasonable doubt, ... the error had no significant impact on the verdict." *Koppi*, 798 N.W.2d at 364 (citations omitted) (internal quotation marks omitted). But when no timely objection is made, we apply the plain-error analysis. *See State v. Matthews*, 779 N.W.2d 543, 548 (Minn.2010); Minn.R.Crim. P. 31.02.

ure to instruct the jury on the intent element of accomplice liability affected the defendant's substantial rights); *State v. Baird*, 654 N.W.2d 105, 113 (Minn.2002) (concluding that plain-error analysis is applicable to unobjected-to erroneous jury instruction). Under the plain-error analysis, Watkins is required to establish (1) an error, (2) that is plain, and (3) that affects the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998) (citing *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). An error affects a defendant's substantial rights if the error was prejudicial and affected the outcome of the case. *Griller*, 583 N.W.2d at 741. "An error in instructing the jury is prejudicial if there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury's verdict." *State v. Gomez*, 721 N.W.2d 871, 880 (Minn.2006). If the first three prongs of the plain-error standard are met, we then assess whether reversal is required to ensure "the fairness, integrity, or public reputation of judicial proceedings." *State v. Scruggs*, 822 N.W.2d 631, 642 (Minn.2012) (citation omitted); *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn.2001) (citing *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544).

The State concedes that the omission of the "knowingly" element of the charged offense was an error that was plain. Therefore, the issue before us is whether the plain error affected Watkins' substantial rights. Citing *Mahkuk*, 736 N.W.2d 675 and *Hall*, 722 N.W.2d 472, the court of appeals concluded that the omission of the "knowingly" element of the charged offense affected Watkins' substantial rights as a matter of law and therefore a new trial was required. As discussed below, we conclude that the court of appeals misconstrued our decisions in *Mahkuk* and *Hall.*

In *Hall*, we observed that "[w]e have consistently held that when an erroneous jury instruction eliminates a required element of the crime this type of error is not harmless beyond a reasonable doubt." 722 N.W.2d at 479. But that observation does not support the proposition that the omission of an element of the charged offense is always prejudicial as a matter of law. Indeed, the observation was supported by the specific facts of three cases in which we had found the error to be harmful. *Id.* We then considered the specific facts of *Hall*, explaining that the omitted instruction pertained directly to the only contested element at trial: premeditation. *Id.* After considering the evidence of premeditation presented by the State, we said "we cannot conclude *beyond a reasonable doubt* that Hall would have been convicted of first-degree premeditated murder without the erroneous transferred intent instruction." *Id.* If we had broadly concluded in *Hall* that an omission of an element of the offense was prejudicial as a matter of law, there would have been no need for us to consider the specific facts of the case. Similarly, in *Mahkuk* we explained that the district court's erroneous jury instruction, which relieved the State of its burden of proving that Mahkuk intended his presence to encourage the completion of the crime, did "not lead automatically to a new trial." 736 N.W.2d at 683. If the omission of an element of the offense is prejudicial "as a matter of law," the erroneous jury instruction in *Mahkuk* would have automatically led to a new trial.

Consequently, we reaffirm our determination in *Hall* and *Mahkuk* that the omission of an element of a crime in a jury instruction does not automatically require a new trial. Instead, the reviewing court must conduct a thorough examination of the record to determine whether the omission of an element of a charged offense

from the jury instruction was sufficiently prejudicial in light of the standard of review. The reviewing court may consider, among other factors, whether: (1) the defendant contested the omitted element and submitted evidence to support a contrary finding, (2) the State submitted overwhelming evidence to prove that element, and (3) the jury's verdict nonetheless encompassed a finding on that element. *See Neder*, 527 U.S. at 19, 119 S.Ct. 1827.

We next examine whether the omission of the "knowingly" element in the jury instruction affected Watkins' substantial rights. To answer that question, we must interpret the word "knowingly" in the statute. At the time of the alleged offenses in this case, the relevant portion of section 629.75, subdivision 2(d), provided that it was a felony "if the person knowingly violates this subdivision: (1) within ten years of the first of two or more previous qualified domestic violence related offense convictions." [4]

Statutory interpretation is a question of law that we review de novo. *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264 (Minn.2013). The goal of all statutory interpretation is to ascertain and effectuate the intent of the Legislature. Minn. Stat. § 645.16 (2012). When interpreting a statute, we give words and phrases their plain and ordinary meaning. *Staab v. Dio-*

*cese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012). Further, we read the statute as a whole and give effect to all of its provisions. *Id.*

The word "knowingly" derives from the word "know," which means "to perceive directly; grasp in mind with clarity or certainty." *The American Heritage Dictionary of the English Language* 970 (4th ed.2006). We interpret the phrase "knowingly violates this subdivision" as used in the version of Minn.Stat. § 629.75 that applied in this case to require the defendant to perceive directly that the contact violated the DANCO statute.[5] Thus, Watkins' reasonable belief that his contact did not violate the DANCO could negate the mental state of the charged offense.

The State presented evidence which established that Watkins knew of the existence of the DANCO and that he contacted his girlfriend as alleged. Watkins, however, testified that he did not knowingly violate the DANCO. He stated that the DANCO referred to a person with a different last name and birth date than his girlfriend, and therefore he thought the DANCO did not apply to her. Watkins admitted that he sent a Valentine's Day card to his girlfriend. But his card was in response to a note that she had mailed to him. He testified that he did not know the

---

4. As noted above, the Legislature recently amended Minn.Stat. § 629.75, subd. 2(d), by removing the word "knowingly." Act of May 8, 2013, ch. 47, § 5, 2013 Minn.Laws 203, 207–08. The statute now reads "if the person violates this subdivision: (1) within ten years of the first of two or more previous qualified domestic violence related offense convictions."

5. The dissent's reliance on *State v. Colvin*, 645 N.W.2d 449 (Minn.2002), is unavailing. Despite the dissent's assertion to the contrary, the *Colvin* court did not interpret the "knowingly violates" language of Minn.Stat.

§ 629.75. Indeed, we did not mention the "knowingly violates" language anywhere in the opinion. Instead, the court in *Colvin* focused on the distinction between an order for protection (OFP) violation that involves contact with the protected person and an OFP violation that involves an entry into the protected person's residence. *Colvin*, 645 N.W.2d at 452. Because our decision in *Colvin* did not expressly or implicitly interpret the "knowingly violates" language of Minn. Stat. § 629.75, our decision today does not call into question, or overrule *sub silentio*, our holding in *Colvin*.

DANCO prohibited him from contacting his girlfriend if she contacted him first.

■ Generally, a mistake of the law is not a defense. *Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991); *State v. Jacobson*, 697 N.W.2d 610, 615 (Minn.2005). But we have recognized that a mistake of law can be a defense when the elements of the offense require an intent to violate a statute because in such a case the mistake of law " 'negat[es] the existence of a mental state essential to the crime charged.' " *Jacobson*, 697 N.W.2d at 615 (quoting 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.6(a) (2d ed.2003)). In *Jacobson*, we observed that an essential element of the offense of conspiracy is "the intent to break the law." *Id.* (internal quotation marks omitted). We then considered whether Jacobson, who was charged with conspiracy to procure unlawful voting and conspiracy to commit forgery, could present evidence regarding two mistake-of-law defenses: reliance on advice of counsel and reliance on an official interpretation of the law. *Id.* at 614. We concluded that the evidence was admissible to determine whether Jacobson had the requisite intent. *Id.* at 616. We therefore held that "evidence relating to a defendant's misunderstanding of the law is admissible when relevant to whether the defendant had the intent required for the charged offense."

*Id.* We rejected the State's argument that Jacobson's reliance on the advice of counsel evidence was unreasonable, and therefore could not be used. We concluded that because "the existence of intent is a question of fact, it must be submitted to the jury." *Id.* We reasoned that the evidence was relevant to intent and thus "need not be objectively reasonable to be presented to the jury."[6] *Id.*

We conclude that the omission of the "knowingly" element was prejudicial and affected Watkins' substantial rights. The question of whether Watkins knowingly violated the DANCO statute turns on Watkins' knowledge that his conduct violated the DANCO at the time of the offense. Because "knowingly" is a question of fact, it must be submitted to the jury for determination.[7] Watkins contested the "knowingly violates this subdivision" element, which at the time of the alleged offenses was a required element of the felony DANCO offense, and the jury's verdict did not encompass a finding on that element. A properly instructed jury could have accepted Watkins' defense and found that Watkins did not knowingly violate the DANCO.

■ Having concluded that the omission of the element from the jury instructions affected Watkins' substantial rights, we must consider the fourth prong of the

**6.** The dissent's reliance on *State v. Oman*, 261 Minn. 10, 25, 110 N.W.2d 514, 524–25 (1961) (Gallagher, J., concurring specially), and *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 563, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971), is misplaced because the offenses in those cases did not require an intent to violate a statute. In *Oman*, the statute made it a crime to "knowingly ... sell ... any obscene book." 261 Minn. at 19 n. 3, 110 N.W.2d at 521 n. 3 (majority opinion). In *International Minerals & Chemical*, the Supreme Court explained that the legislative history surrounding the enactment of the offense in question failed to

establish that Congress intended to include knowledge of the hazardous material regulation as an essential element of the offense. 402 U.S. at 559–63, 91 S.Ct. 1697.

**7.** The dissent concludes as a matter of law that Watkins knowingly violated the DANCO by responding to the written note he received from his girlfriend. Under the circumstances of this case, we are not willing to infer a knowing violation of the law. Instead, we conclude that a knowing violation is a question of fact for the jury.

plain-error test: whether a new trial is required to ensure the fairness, integrity, and public reputation of judicial proceedings. The State contends that the district court's error need not be addressed because Watkins' defense is as "wholly unbelievable" as the defense in *Griller*, 583 N.W.2d at 742. In *Griller*, the defendant claimed that a frail 72–year–old man, who used a walker, helped the defendant carry the victim's body down a flight of stairs and then single-handedly dismembered the body. *Id.* We agree that Watkins' defense that the minor typographical errors in the DANCO led him to believe that the DANCO did not prohibit contact with his girlfriend is questionable. But it is the function of the fact-finder, not this court, to make credibility determinations. Moreover, Watkins' claim that he did not know the DANCO prohibited him from contacting his girlfriend if she contacted him first clearly raises the question of whether he "knowingly" violated the statute. Ultimately, the district court's erroneous instruction prevented the jury from considering Watkins' primary defense in rendering its verdict. Based on the specific facts of this case, we conclude that allowing the jury to consider Watkins' defense will protect the fairness, integrity, and public reputation of judicial proceedings.

Accordingly, we affirm the court of appeals' decision to reverse Watkins' convictions and remand for a new trial, but we do so on different grounds. Specifically, an unobjected-to jury instruction that omits an element of the charged offense does not, as a matter of law, affect a defendant's substantial rights. Instead, the court must consider the factors we articulated above to determine whether the omission of an element of a charged offense from the jury instruction was sufficiently prejudicial to warrant a new trial. Based upon an examination of the record,

we conclude that the omission of the "knowingly" element of the charged offense affected Watkins' substantial rights, and that a new trial is required to ensure the fairness, integrity, and public reputation of judicial proceedings.

Affirmed.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

In this case, the court defers to the State's concession on appeal that the district court committed an error that was plain when it failed to instruct the jury that the State was required to prove Watkins possessed subjective knowledge that his conduct violated the domestic abuse no contact order (DANCO). The court then goes on to conclude that a new trial is required because the alleged error affected Watkins' substantial rights. I disagree with the conclusion that Watkins is entitled to a new trial. In my view, there was no error, much less plain error. The phrase "knowingly violates," as used in Minn.Stat. § 629.75, subd. 2(d) (2012), does not require a defendant to subjectively know that his or her conduct violates a DANCO. Further, if it is assumed that there was plain error, that error did not affect Watkins' substantial rights. Any such error did not affect Watkins' substantial rights because, on the record before us, no reasonable jury could find that Watkins did not subjectively know that his conduct violated the DANCO. Finally, if it is assumed that there was error that was plain that affected Watkins' substantial rights, this is not a case that requires the court to act to protect the fairness and integrity of the judicial proceeding. It is not such a case because the district court

clearly and correctly explained to Watkins what his obligations under the DANCO were and therefore there is no need for us to act to ensure fairness and the integrity of the judicial proceeding.

## I.

Although we have not previously addressed the question presented here with respect to a felony violation of the DANCO statute, we have addressed the question as it relates to a felony violation of the order for protection (OFP) statute, Minn. Stat. § 518B.01, subd. 14(d) (2012), which contains the same "knowingly violates" language. In *State v. Colvin*, the State alleged that the defendant entered the residence of his ex-wife in violation of a valid OFP. 645 N.W.2d 449, 451 (Minn.2002). We explained that, to prove the felony OFP violation, the State was required to prove beyond a reasonable doubt not only the "illegal entry," but also that "a valid OFP existed, and [the] defendant knew of [the OFP]." *Id.* at 454 n. 1. Nothing in *Colvin* suggests that the State was required to prove that the defendant possessed a subjective knowledge that his conduct violated the OFP. Nor is there anything in *Colvin* or the facts of this case that suggests that the "knowingly violates" language in Minn.Stat. § 629.75, subd. 2(d), should have a different meaning than that same language in Minn.Stat. § 518B.01, subd. 14(d).[1] Thus, in this case, the State was required to and did prove beyond a reasonable doubt that: (1) Watkins knew that the victim was the subject of the domestic assault charge, Minn.Stat. § 609.2242, subd. 4 (2012), against him; and that (2) the subject of the domestic assault charge was the subject of the corresponding DANCO. If the State had failed to prove those facts, there would have been no basis for issuing the DANCO against Watkins in the first place. After all, the State cannot successfully obtain a DANCO against a defendant charged with domestic assault unless the defendant assaulted another person. That person, the victim of the domestic assault charge, has to be the same person who is the subject of the DANCO and, in Watkins' case, it was the same person—his girlfriend.

Our decision in *Colvin* is consistent with well-established law. In *Bryan v. United States*, the United States Supreme Court explained that "the term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law.... '[T]he knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.'" 524 U.S. 184, 192 n. 14, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (quoting *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 345, 72 S.Ct. 329, 96 L.Ed. 367 (1952) (Jackson, J., dissenting)); *see also United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971) (applying the "principle that ignorance of the law is no defense" to conclude that the term "knowingly violates" did not require proof of knowledge of the law in addition to the facts). Moreover, as Justice Gallagher's concurrence in *State v. Oman* explained, the word "knowingly" does not require proof of actual subjective knowledge that the act was unlawful. 261 Minn. 10, 25, 110 N.W.2d 514, 524–25 (1961) (Gallagher, J., concurring specially). The defendant in *Oman* asserted several constitutional challenges to a statute that made it a crime to

---

1. The court contends that my reliance on *Colvin* is unavailing. It does so without any explanation as to why the words "knowingly violates" should have a different meaning in each statute. In the process, the court calls into question, if not overrules *sub silentio,* our holding in *Colvin*.

"sell ... any obscene or indecent book." *Id.* at 12 n. 1, 110 N.W.2d at 517 n. 1 (majority opinion). After rejecting the defendant's constitutional challenges, the court noted that while the case was on appeal the Legislature had amended the statute to read, "It is unlawful for a person *knowingly* to exhibit, [or] sell ... any obscene book." *Id.* at 19–20, 110 N.W.2d at 521–22 (alteration in original) (emphasis added). Concluding that there was a need to discuss the newly added "knowingly" requirement, Justice Gallagher concurred specially. *Id.* at 22–24, 110 N.W.2d at 523–24. He explained that the "knowingly" requirement would be satisfied when "a jury could conclude under the record ... that a reasonably prudent person having opportunity to observe would have knowledge of the type of publications he was selling even though he expressly denied such knowledge." *Id.* at 25, 110 N.W.2d at 525.

In light of our existing case law, I conclude that the phrase "knowingly violates" in Minn.Stat. § 629.75, subd. 2(d) (2012), does not require a defendant to possess subjective knowledge that his or her conduct violates the DANCO. Because subjective knowledge is not required to establish a DANCO violation, I further conclude that there was no error, much less plain error, here. Consequently, I would not defer to the State's concession on appeal that the district court committed an error that was plain when it failed to instruct the jurors that the State was required to prove that Watkins possessed subjective knowledge that his conduct violated the DANCO.

## II.

Even if I were to defer to the State's concession, I would conclude that the error did not affect Watkins' substantial rights because there would be no reasonable like-lihood that giving the instruction would have had a significant effect on the verdict. An error affects a defendant's substantial rights if the error was prejudicial and affected the outcome of the case. *State v. Griller,* 583 N.W.2d 736, 741 (Minn.1998). "An error in instructing the jury is prejudicial if there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury verdict." *State v. Gomez,* 721 N.W.2d 871, 880 (Minn.2006).

Watkins was charged with felony domestic assault for assaulting his victim, the woman with whom he lived. At his first appearance, the district court set bail and conditions of release, which included that Watkins have no contact with the victim. At a hearing immediately following his first appearance, as required by the DANCO statute, the district court issued, without objection, a DANCO under Minn.Stat. § 629.75 (2012). The DANCO required Watkins to "have no contact directly, indirectly or through others, in person, by telephone, in writing, electronically or by any other means" with the victim. The DANCO further contained a section captioned "WARNINGS TO DEFENDANT." Those warnings included the following:

> Compliance with this Order is a condition of your release and is in addition to any other conditions of release that may be imposed. Your release status may be revoked if you violate any aspect of this Order.

> **A violation of this order is a crime** and may cause you to be arrested and subject to possible further criminal charges.

Before the DANCO hearing ended, the judge explained to Watkins that under the conditions of the DANCO Watkins must avoid "direct or indirect contact" with the victim, adding that it was Watkins' obligation to stay away from her and "not have any contact" with her. The judge

also made it clear that Watkins was to stay one mile away from the victim's address. Watkins does not claim—nor can he—that the victim referred to by the judge in his explanation was anyone other than the alleged victim identified in the domestic assault charge—the woman with whom he had been living.

Given the clarity with which the DANCO was written, the judge's unequivocal articulation of the DANCO conditions, and the nature of Watkins' excuses, any reasonable jury would conclude that Watkins "knew" that he was not permitted to have any contact with the "victim" of his alleged felony domestic assault. Finally, there is nothing in the record suggesting that Watkins contacted the victim by mistake or accident, inadvertently, unintentionally, or against his will. On this record, whether viewed subjectively or objectively, there is no way to conclude that Watkins did not knowingly violate the DANCO. Therefore, even if there was error, Watkins' substantial rights were not affected because there is no reasonable likelihood that the error affected the jury's verdict.[2] For the same reasons that any error did not affect Watkins' substantial rights, the need to ensure fairness and the integrity of the judicial proceeding does not require that the error, if any, be addressed.

Because any error did not affect Watkins' substantial rights, I would affirm his convictions. I therefore respectfully dissent.

---

2. The court suggests that a reasonable jury could conclude that Watkins did not know that he was not permitted to have contact with the victim because nothing in the court's decision or the language of the DANCO explained how Watkins should respond to contact initiated by the victim. But the language of the DANCO is clear and certain, requiring Watkins to have "*no* contact with the victim." (Emphasis added.) The court evidently reads "no contact" to mean some contact. The court's statement makes one wonder what part of "no" does the court not understand.