*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0753**

Don Antione Jones, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed December 8, 2014
Affirmed
Hudson, Judge**

Ramsey County District Court
File No. 62-CR-11-1258

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Hudson, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**HUDSON**, Judge

In this postconviction appeal seeking relief from his conviction of violating a domestic abuse no-contact order (DANCO), appellant argues that his conviction must be reversed because the district court did not find beyond a reasonable doubt that he knowingly violated the DANCO until after he filed his postconviction petition and that he is entitled to a new trial because the judge abandoned his neutral role by extensively questioning him. We affirm.

## FACTS

Following a bench trial in September 2011, appellant Don Antione Jones was convicted of one count of felony violation of a DANCO in violation of Minn. Stat. § 629.75, subd. 2(d)(1) (2010). The charges stemmed from allegations that appellant had made repeated jail calls to his former wife, S.J., in violation of orders prohibiting him from contacting her.

Appellant testified at trial that he had been diagnosed with several heart-related conditions for which he took prescribed medications. He testified that the Ramsey County Law Enforcement Center (LEC) attempted to accommodate his illness, but that his medications were changing and that he experienced symptoms which caused him to fear for his health. He stated that he went to the hospital several times but was unable to retain a copy of his medication list or visit his original cardiologist.

In response to questioning by his attorney, appellant testified that he called S.J. in violation of the DANCO because his symptoms persisted and he was unable to

2

communicate outside the jail. He testified that he wanted S.J. to forward his hospital records to his cardiologist and attempt to obtain a furlough for him to see that doctor, which he was unable to accomplish through requests to prison staff, friends, his public defender, and the district court. He testified that he called S.J. as a "last resort" because his stroke symptoms were getting worse, that he "needed somebody to help" who "[would] know for a fact that [he was] not just making this up," and "at that point [he] didn't even care what it took."

The prosecutor declined to cross-examine appellant. The district court then asked him several questions about his medical condition and who he had asked for help to correct his medication. The district court also inquired how many times he had called S.J. between December 22 and January 30; appellant replied that he had called her ten times during that period. At closing argument, defense counsel asserted a necessity defense, arguing that appellant believed that a heart attack or stroke could be imminent, had attempted other alternatives, had stopped contacting LEC personnel because he believed that they could not deal with his condition, and he needed to reach his original doctor.

The district court issued oral findings on the record, finding appellant guilty of violating a DANCO. The district court rejected appellant's necessity defense, finding that based on its review of appellant's jail calls, which contained no medical content, there appeared to be no connection between his medical treatment and his communications with S.J. The district court further found that a DANCO existed, that appellant had two or more qualified domestic-violence-related offense convictions within

3

ten years, and that he violated the DANCO on certain dates. The district court did not issue a finding that appellant knowingly violated the DANCO.

The district court sentenced appellant to one year and one day. Appellant did not directly appeal his conviction but filed a postconviction petition in November 2013, alleging that the district court had failed to find beyond a reasonable doubt that he knowingly violated the DANCO and that the judge had abandoned his neutral role by extensively questioning him during trial. The postconviction court denied the petition, finding that the district court's failure to issue written findings did not entitle appellant to a new trial and that the district court had questioned appellant to elicit testimony relating to his necessity defense. The postconviction court also issued written findings on the merits, which included a finding that appellant knowingly violated the DANCO. This appeal follows.

## D E C I S I O N

### I

Appellant challenges the postconviction court's denial of relief, arguing that the district court erred by failing to find at trial that he knowingly violated the DANCO, an element of the offense. We review the postconviction court's determinations for an abuse of discretion. *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011). We review the postconviction court's findings for clear error and issues of law de novo. *Id.* Statutory construction presents a question of law. *Carter v. State*, 787 N.W.2d 675, 679 (Minn. App. 2010). In a postconviction proceeding, the appellant has the burden to show that he is entitled to relief. *Pippitt v. State*, 737 N.W.2d 221, 226 (Minn. 2007).

4

At the time of appellant's offense, the DANCO statute provided, in relevant part,

> (d) A person is guilty of a felony and may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both, if the person knowingly violates this subdivision:
>
> > (1) Within ten years of the first of two or more previous qualified domestic-violence-related offense convictions or adjudications of delinquency; or
> > (2) While possessing a dangerous weapon. . . .

Minn. Stat. § 629.75, subd. 2 (d)(1), (2) (2010).[1]

The Minnesota Supreme Court has held that the omission of the element that a defendant "knowingly" violated a DANCO from jury instructions constitutes plain error. *State v. Watkins*, 840 N.W.2d 21, 28 (Minn. 2013). The supreme court concluded that the word "knowingly" in this context "require[s] the defendant to perceive directly that the contact violated the DANCO statute," so that his "reasonable belief that his contact did not violate the DANCO could negate the mental state of the charged offense." *Id.* at 29.

Appellant argues, based on *Watkins*, that the district court committed reversible error by failing to make a finding immediately following trial that he knowingly violated the DANCO. But the district court's delay in making such a finding does not compel reversal unless appellant was prejudiced by the error. *Cf. id.* at 28-29 (concluding that, absent demonstrated prejudice, the omission of an element of the offense from jury instructions does not require a new trial); *see also State v. Thomas*, 467 N.W.2d 324, 326 (Minn. App. 1991) (noting that an appellate court "will not reverse a conviction for a

---

[1] Since appellant's conviction, the Minnesota legislature has amended Minn. Stat. § 629.75, subd. 2(d)(1), to remove the word "knowingly." *See* 2013 Minn. Laws, ch. 47, § 5, at 207-08.

technical error unless the accused has been prejudiced through the impairment of substantial rights essential to a fair trial") (quotation omitted).

Appellant argues that because he contested that he knowingly violated the order, he was prejudiced by the district court's failure to make a finding on that element at trial. But the district court made extensive findings rejecting appellant's necessity defense. And the evidence was overwhelming that appellant "perceive[d] directly that [his] contact violated the DANCO statute." *Watkins*, 840 N.W.2d at 29. Although appellant argues that he did not intend to scare his former wife, he admitted at trial that he violated the DANCO. Appellant's attorney asked him, "Who did you call on December 22nd in violation of a domestic abuse no-contact order?" Appellant replied, "[m]y ex-wife." And in one jail call to a third party, which the district court reviewed as evidence, appellant acknowledged, "I just did something really stupid. . . . I called her." When the other party to the call indicated appellant was violating a court order, he responded, "I can keep . . . violat[ing] as much as I want to." Thus, we conclude that the district court's failure to make a specific finding at trial that appellant knowingly violated the DANCO did not prejudice appellant and does not require reversal.

Appellant also argues that the district court erred by failing to make timely written findings. In a case tried without a jury, "[t]he court, within seven days after making its general finding in felony and gross misdemeanor cases, must in addition make findings in writing of the essential facts." Minn. R. Crim. P. 26.01, subd. 2(b). "If the court omits a finding on any issue of fact essential to sustain the general finding, it must be deemed to have made a finding consistent with the general finding." *Id*., subd. 2(e). The purpose of

requiring written findings is to aid the appellate court in its review. *State v. Scarver*, 458 N.W.2d 167, 168 (Minn. App. 1990). "Particularized findings . . . ensure that prescribed standards are utilized by the [district] court, and . . . satisfy the parties that an important question is fairly considered and decided by the [district] court." *Reyes v. Schmidt*, 403 N.W.2d 291, 293 (Minn. App. 1987) (quotation omitted). In certain circumstances, this court has concluded that a district court's failure to issue written findings requires a remand to assure that the district court has fairly and fully considered the issue of the defendant's guilt. *See, e.g., State v. Taylor*, 427 N.W.2d 1, 5 (Minn. App. 1988) (remanding for written findings when district court made oral findings, but only in response to the defendant's question at sentencing), *review denied* (Minn. Sept. 28, 1988).

We are troubled by the district court's failure to make written findings on an element of the offense until two years after trial. But this court has determined that the time requirements of rule 26.01 are directory rather than mandatory. *Thomas*, 467 N.W.2d at 326. The postconviction judge who issued the later written findings was the same judge who presided at trial, and we are able to review the findings on appeal. The district court is deemed to have made a specific finding that appellant knowingly violated the DANCO in light of its conclusion of law that he violated Minn. Stat. § 629.75, subd. 2(d)(1). *See State v. Holliday*, 745 N.W.2d 556, 562–63 (Minn. 2008) (inferring specific finding of premeditation based on general finding of guilt). The district court therefore did not abuse its discretion by denying appellant's claim for postconviction relief on this issue.

7

## II

Appellant argues that the district court's questions to him during trial deprived him of his right to a fair trial before an impartial judge. *See Cuypers v. State*, 711 N.W.2d 100, 104 (Minn. 2006) (noting that right). Whether a judge's conduct deprived the defendant of the right to a fair trial presents a legal question, which this court reviews de novo. *State v. Dorsey*, 701 N.W.2d 238, 249 (Minn. 2005). The judge "must maintain the integrity of the adversary system" by acting "fair to both sides" and "refrain[ing] from remarks which might injure either of the parties." *State v. Schlienz*, 774 N.W.2d 361, 367 (Minn. 2009). A strong presumption exists that a judge has discharged judicial duties properly. *McKenzie v. State*, 583 N.W.2d 744, 747 (Minn. 1998).

Although the Minnesota Rules of Evidence authorize the district court to examine witnesses, *see* Minn. R. Evid. 614(b), the examination of witnesses is more appropriately counsel's function. *State v. Sandquist*, 146 Minn. 322, 324, 178 N.W. 883, 884 (1920). In a jury trial, the district court's prerogative to examine witnesses should be exercised only under exceptional conditions and with great caution, particularly when witness credibility is at issue. *State ex rel. Hastings v. Denny*, 296 N.W.2d 378, 379 (Minn. 1980). But active interrogation by judges "[i]n a non-jury case, . . . although not always helpful, is rarely prejudicial." *Jackson v. United States*, 329 F.2d 893, 894 (D.C. Cir. 1964).

When the prosecutor declined to question appellant, the district court asked him specific questions about when he realized a discrepancy existed between how his medication was prescribed and how it should have been prescribed; which attorneys he had asked for help and when; and how many times he had sought district-court assistance. The judge also asked appellant how many times he had called S.J. between December 22 and January 30.

Appellant argues that the judge's actions deprived him of the right to an impartial judge by eliciting facts that were damaging to his necessity defense, citing *Dorsey*, 701 N.W.2d at 253. *See id.* (holding that a defendant was deprived of an impartial judge, amounting to structural error, when the judge questioned the veracity of an assertion made by a key witness, independently investigated that fact, and reported the results of that investigation to counsel). But, unlike the actions in *Dorsey*, the district court's questioning of appellant does not display improper conduct and does not establish the judge's actual or apparent bias. *See State v. Munt*, 831 N.W.2d 569, 580–81 (Minn. 2013) (rejecting the argument that the judge's scheduling comments demonstrated actual or apparent bias by showing that he considered the defendant guilty before jury deliberation). The judge's questions clarified the basis of appellant's necessity defense, on which the district court was asked to rule. And appellant was not prejudiced by the judge's question about how many times he had called S.J. because he had previously testified that he had called her in violation of the DANCO. We conclude that the district court's questioning of appellant did not nullify the presumption that the judge properly

9

discharged his judicial duties, *McKenzie*, 583 N.W.2d at 747, and the postconviction court did not err by rejecting appellant's claim of judicial bias.

**Affirmed.**