*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0537**

State of Minnesota,
Respondent,

vs.

Lisa Dorthea Moodie,
Appellant.

**Filed February 16, 2016
Reversed and remanded
Chutich, Judge**

Washington County District Court
File No. 82-CR-14-1291

Lori M. Swanson, Attorney General, St. Paul, Minnesota; and

Joseph D. Van Thomme, Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Stillwater, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Worke, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Lisa Moodie appeals her third-degree conviction of operating a motor vehicle under the influence of alcohol, *see* Minn. Stat. §§ 169A.20, subd. 1(1), 169A.26,

subd. 1(a) (2014), arguing that the prosecutor committed reversible misconduct by (1) introducing and eliciting testimony and presenting video evidence that her van had whiskey plates; (2) presenting video evidence in which officers can allegedly be heard discussing forfeiture paperwork; (3) impermissibly shifting the burden of proof in closing argument by suggesting that Moodie needed to present evidence; and (4) misstating the evidence in his closing argument. Because we agree that the prosecutor committed prejudicial misconduct in his closing argument and in introducing evidence regarding Moodie's "whiskey plates," we reverse and remand for a new trial.

## FACTS

At approximately 3:00 a.m. on April 7, 2014, Washington County Deputy Nicholas Bradt found a van parked in a turning lane at an intersection. Bradt did not see anyone in the van, but the driver's window was down and a purse was inside. Bradt ran the license plate number, learned the van was registered to Moodie, and called a tow truck.

Bradt then heard a rustling sound in the woods nearby. He and another officer searched the woods and found Moodie, lying facedown. Both officers testified that Moodie was clearly intoxicated. The officers testified that Moodie told them she "drove" to the intersection from a bar in Maplewood, but Moodie later said that she meant she rode there in the van while a friend drove. Bradt found keys clipped to her sweater and a cell phone. Moodie took a breath test at approximately 5:40 a.m. that registered a blood-alcohol content value of 0.18, and the state ultimately charged her with one count of third-degree driving while under the influence of alcohol within 10 years of a prior impaired-driving incident. *See* Minn. Stat. §§ 169A.20, subd. 1(1) (prohibiting driving while impaired),

2

169A.26, subd. 1(a) (noting that a person "is guilty of third-degree driving while impaired if one aggravating factor was present when the violation was committed"), 169A.03, subd. 3(1) (listing "a qualified prior impaired driving incident within the ten years immediately preceding the current offense" as an aggravating factor).

Moodie stipulated to the prior impaired-driving conviction before trial because, as her defense counsel stated at trial: "I think it's fair to say if the jury knew you had a prior DUI, that they might assume that you . . . are a habitual drinker and driver." Moodie also moved the district court to order the state to instruct all the state's witnesses to avoid "any reference to any prior DUI, any reference to any implied consents, any reference to forfeiture of the vehicle." Moodie's counsel emphasized that this motion included the obligation "to redact or only play portions" of the implied-consent video that "don't reference any of the prior DUI . . . [or] implied consent." The district court granted her motion. Moodie's counsel further asked that the state redact or not elicit testimony regarding forfeiture, and the district court agreed.

During opening statements, the state twice mentioned Moodie's license plate number, which begins with the letters WE and ends with four numbers. The state later elicited testimony from Bradt about Moodie's license plate number, to which he responded: "WE [****]." In addition, the state played Bradt's squad-car video, in which the jury could see Moodie's license plate and allegedly hear the officers discuss filling out forfeiture forms. Moodie asserts that these references are important because a series of numbers and letters beginning with the letter "W" indicates "whiskey plates" in Minnesota, meaning "license plates issued to a person who had their driver's license suspended for alcohol-

3

related offenses." *State v. Brooks*, 838 N.W.2d 563, 573 (Minn. 2013). Apart from her pretrial motion, Moodie did not object to this conduct.

Moodie testified that she had gone to a karaoke bar that night to sing. She did not drink any alcohol because she was taking ibuprofen for a bad toothache. Moodie called other witnesses who testified that she did not drink alcohol, or that she did not appear to be drinking alcohol, and that she left the bar sometime between 12:30 a.m. and 1:00 a.m. Moodie testified that her friend, J.T., left the bar with her because she thought her car was "running rough;" he offered to diagnose the trouble or at least be with her if something happened to it. Moodie testified that J.T. drove.

Moodie testified that as she and J.T. approached the intersection where the van was found, the van "just died, lights went out [and] everything." She testified that she and J.T. were unable to get the van started again, so J.T. left, presumably to get help. While J.T. was gone, Moodie testified that she found a bottle of vodka in her van. She further testified that she took the bottle of vodka into the woods because she was alone waiting for the van and "it was kind of creepy"; she also testified that her tooth was "killing" her, so she drank the vodka to help with the pain. After she drank "quite a bit" of the vodka, she threw the bottle into the woods. Then she began to worry because J.T. had not returned, so she called another friend and asked him to come help her.

The jury convicted Moodie of one count of third-degree driving while impaired, and the district court sentenced her to 365 days in jail, staying 326 days for five years. Moodie appealed. The state did not file a respondent's brief, and this court ordered that the case be

4

determined on the merits. *See* Minn. R. Civ. App. 142.03 (providing that if respondent fails to file a brief, the case shall be determined on the merits).

### D E C I S I O N

"On appeal, an unobjected-to error can be reviewed only if it constitutes plain error affecting substantial rights." *State v. Ramey*, 721 N.W.2d 294, 297 (Minn. 2006) (citing Minn. R. Crim. P. 31.02). Although Moodie concedes that the prosecutor's conduct was not objected to, we note that it may have been unnecessary to renew her objection at trial after obtaining a clear evidentiary ruling from the district court. *See State v. Word*, 755 N.W.2d 776, 782 (Minn. App. 2008) ("[O]nce the court makes a definitive ruling on the record admitting . . . evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error." (quoting Minn. R. Evid. 103(a))); *see also State v. Harris*, 521 N.W.2d 348, 354 (Minn. 2004) ("Questions by a prosecutor calculated to elicit or insinuate inadmissible and highly prejudicial character evidence and which are asked in the face of a clear trial court prohibition are not tolerable."). But because Moodie does not contend that harmless-error review is appropriate, and because we conclude that she would prevail under either test, we will review for plain error. *See State v. Little*, 851 N.W.2d 878, 884 (Minn. 2014) (concluding that if the appellate court finds a remedy appropriate under plain-error analysis, it need not resolve which standard applies).

This court reviews claims of unobjected-to prosecutorial misconduct under a modified plain-error test. *Ramey*, 721 N.W.2d at 302. Under the modified plain-error test, the defendant must show that the prosecutor committed error and that the error is plain. *Id.* If the defendant is successful, the burden shifts to the state to demonstrate "lack of

prejudice; that is, [that] the misconduct did not affect substantial rights." *Id.* If the state fails to carry its burden, this court must consider the fourth prong of the plain-error test: "whether a new trial is required to ensure the fairness, integrity, and public reputation of judicial proceedings." *State v. Watkins*, 840 N.W.2d 21, 30-31 (Minn. 2013).

### *Plain Error*

Moodie argues that the prosecutor committed plain error by introducing evidence that she had "whiskey plates." She contends that "it is common knowledge that whiskey plates are issued to repeat DUI offenders," so there was a serious risk that the jury would infer that she had a previous impaired-driving conviction. Moodie's argument is persuasive. "An error is plain if it is clear and obvious at the time of appeal. An error is clear or obvious if it contravenes case law, a rule, or a standard of conduct." *Little*, 851 N.W.2d at 884 (quotations omitted).

The prosecutor was under a court order instructing it to admonish its witnesses to refrain from "any reference to any prior DUI, any reference to any implied consents, [and] any reference to forfeiture of the vehicle." The parties also had an agreement that the state would either redact or not play any portion of the squad car video that referred to the prior DUI and that the state would redact or not elicit testimony regarding forfeiture. Despite these clear orders, the state made two references to Moodie's license plate number in its opening statement and elicited testimony from one of the officers regarding her license plate number, which starts with "W," indicating special registration or "whiskey plates."

Special registration plates, commonly known as "whiskey plates," are marked by "a special series of numbers or letters so as to be readily identified by traffic law enforcement

6

officers." Minn. Stat. § 169A.60, subd. 13(a) (2014). While whiskey plates are not issued exclusively to violators of impaired-driving statutes, *see id.*, in the context of a trial on an impaired-driving charge, the risk that the jury would infer a previous impaired-driving conviction is significant.

This risk exists even though the jury needed to infer from Moodie's license plate number that she had a previous impaired-driving conviction. The Minnesota Supreme Court has found clear prejudicial error under similar circumstances. In *State ex rel. Black v. Tahash*, a police officer testified that he had asked the defendant "when was the last time he saw [the alleged accomplice], and he stated that he had only seen him once since leaving Stillwater." 280 Minn. 155, 157, 158 N.W.2d 504, 505 (1968). There, the supreme court concluded that the officer's remark was grounds for a mistrial, even though the jury needed to make the connection between the city of Stillwater and the prison located there, to infer that the defendant had a previous criminal conviction. *Id.* at 157, 158 N.W.2d at 506.

Because the prosecutor's references to Moodie's whiskey plates contravened a direct court order to avoid any mention of her previous impaired-driving conviction, we conclude that Moodie has shown that the prosecutor committed plain error. We further note that, although we need not address it in detail here, even if the prosecutor had not violated clear court orders, he still would have committed misconduct under settled Minnesota caselaw. *See State v. Clark*, 375 N.W.2d 59, 61-62 (Minn. App. 1985) (holding that district courts "must accept an unequivocal judicial admission of a prior DWI and let the defendant remove from the jury the issue of whether he had prior DWI convictions"); *State v. Berkelman*, 355 N.W.2d 394, 397 n.2 (Minn. 1984) (noting that if a defendant

7

concedes a prior DWI conviction, evidence regarding the conviction should not be admitted unless it is relevant to a disputed issue because of its "great potential for being improperly used").

In addition, Moodie argues that the prosecutor committed plain error when he repeatedly told the jury that no evidence supported her version of events, implying that her testimony is not evidence. She argues that the "no evidence" comment was plainly improper because she is competent to testify on her own behalf, and her testimony was "evidence which if believed by jurors would constitute proof of her innocence." We agree.

The challenged portion of the prosecutor's closing argument follows:

> You've got her there, you've got her car there. You've got a statement that she drove herself there. *You've got no evidence of a bottle. Certainly, if she's presenting to you now that hey, I drove and then I drank, there is no evidence of that.*
> [Defense Counsel] pressed the officers, said [to] the officers you didn't really search very thoroughly. The officer said we were looking for somebody, we heard somebody, we looked around. They didn't find anything. Now she says she pitched it. That's a convenient fabrication. *There is no evidence she pitched it.*
> You can have doubt. You can say I'm not hundred percent sure, but any doubts in this case are unreasonable. There is no reasonable doubt that this defendant did not commit this offense. *To put it another way, this defendant committed the offense. It's proof beyond a reasonable doubt. There is no other proof.*

(Emphases added).

A prosecutor "may argue all reasonable inferences from evidence in the record" during closing argument, but it "is unprofessional conduct for the prosecutor intentionally

8

to misstate the evidence or mislead the jury as to the inferences it may draw." *State v. Salitros*, 499 N.W.2d 815, 817 (Minn. 1993) (quotation omitted).

Despite a bias or interest in the outcome of the case, criminal defendants are competent to testify on their own behalf. *State v. Bergeron*, 452 N.W.2d 918, 926 (Minn. 1990). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401.

Here, Moodie is competent to testify on her own behalf, and her testimony was relevant evidence. In addition to her own testimony, Moodie called witnesses to testify that she was not or did not appear to be drinking at the bar, supporting a key element of her testimony. Accordingly, the prosecutor erred in arguing that no evidence supported her version of events.

Finally, Moodie also contends that the prosecutor committed reversible error by implying that she had the burden of proving a defense of post-driving alcohol consumption, even though the state was required to prove beyond a reasonable doubt that she was under the influence while she was driving. *See* Minn. Stat. § 169A.20, subd. 1(1). Her argument is persuasive.

The Minnesota Supreme Court has held that it is "highly improper" for a prosecutor to imply that the defendant has the burden of proof. *State v. Nissalke*, 801 N.W.2d 82, 106 (Minn. 2011) (quotation omitted). "A prosecutor improperly shifts the burden of proof when she implies that a defendant has the burden of proving his innocence." *Id.* (quotation omitted). But a prosecutor does not "improperly shift the burden" by commenting "on the

9

lack of evidence supporting a defense theory." *Id.* (quotation omitted). Further, a district court can cure prosecutorial error by giving a corrective instruction. *Id.*

In *State v. Johnson*, this court found prosecutorial misconduct when a prosecutor referred to the defendant's failure to call a medical expert to testify regarding his explanation that his chronic disease was the reason he appeared intoxicated when he was arrested for a DWI. 672 N.W.2d 235, 240 (Minn. App. 2003), *review denied* (Minn. Mar. 16, 2004). This court noted:

> This defense attempts to negate an element of the prosecutor's case, on which the burden of persuasion rests at all times with the prosecution. Thus, the jury could have taken the prosecutor's comment regarding the lack of medical evidence to mean that appellant had some burden to disprove he was under the influence, and if this occurred, the comment would amount to misconduct.

*Id.* In *Nissalke*, however, the Minnesota Supreme Court found that a prosecutor can comment on the lack of evidence supporting a defense theory without committing misconduct. *Nissalke*, 801 N.W.2d at 106.

Here, the prosecutor did not simply comment on the lack of evidence supporting a defense theory, as in *Nissalke*, but also commented on Moodie's failure to present evidence, even though the burden always rested on the prosecution. The prosecutor's comments imply that Moodie had some burden to produce evidence to prove her version of events, particularly the last challenged comment that "[t]here is no other proof." Taken in the context of the closing argument overall, we conclude that the prosecutor plainly erred in improperly shifting the burden of proof onto the defendant.

10

*Prejudice*

Once the defendant successfully demonstrates plain error under the modified plain-error test, the burden shifts to the state to demonstrate that the defendant was not prejudiced by the misconduct. *Ramey*, 721 N.W.2d at 302. Here, the state did not file a respondent's brief. Accordingly, the state waived any argument that the error did not affect Moodie's substantial rights and failed to carry its burden. *See State v. Porte*, 832 N.W.2d 303, 312-13 (Minn. App. 2013) (holding that the state's failure to assert a harmless-error analysis in its respondent's brief was waiver). Because the state failed to carry its burden, we assume that the error was prejudicial to Moodie's substantial rights.

*Fairness and Integrity of Judicial Proceedings*

We next address the fourth *Ramey* prong: whether reversal is necessary "to ensure fairness and the integrity of the judicial proceedings." *Ramey*, 721 N.W.2d at 298 (quotation omitted). To warrant reversal, the prosecutor's misconduct—placed into the context of the entire trial—must be "so serious and prejudicial" that it impairs a defendant's constitutional right to a fair trial. *Johnson*, 616 N.W.2d at 727–28. A reversal is not required to preserve the integrity of judicial proceedings, however, if granting a defendant a new trial would be an "exercise in futility." *State v. Griller*, 583 N.W.2d 736, 742 (Minn. 1998).

Caselaw confirms that the erroneous admission of evidence of prior DUI convictions is prejudicial error. This court stated in *State* v. *Clark*:

> Nor can this error be considered harmless. Error in the reception of evidence will only be disregarded if there is no reasonable possibility that the evidence complained of might

11

> have contributed to the conviction, or when the defendant's guilt was conclusively proven.

375 N.W.2d at 62-63 (quotations omitted). The court in *Clark* proceeded to conclude that "[g]iven the highly prejudicial nature of this evidence, . . . there is reasonable doubt that the erroneously admitted evidence contributed to the verdict." *Id.* at 63.

Here, as in *Clark*, the physical evidence is consistent with both versions of the facts. Moodie concedes that she was intoxicated when the police officers found her, that she left her van in the turning lane of an intersection, and that she had gone to the bar to sing karaoke earlier in the evening. Moodie's testimony was largely uncontradicted; the state's theory of the case was principally that her version of events did not make any sense. While the state's theory may seem more reasonable than Moodie's account, that does not mean that her guilt was "conclusively proven," *see id.*, such that it is unlikely that "the highly prejudicial nature of this evidence," *id.*, did not contribute to the verdict.

The jury need not believe Moodie's testimony that she began drinking after her van broke down and can draw a reasonable inference from the facts surrounding her arrest that she had gotten drunk at the bar before driving her van home that night. But because Moodie and the state told different versions of the events immediately preceding the arrest and offered different interpretations of Moodie's statement that she "drove" to the intersection, the case turns on credibility determinations. If the jury understood the references to Moodie's license plates as prejudicial evidence of a prior DWI conviction, the jury could have used it improperly as propensity evidence. The evidence is not conclusive enough

12

that we can say that remanding for a new trial would be an "exercise in futility." *See Griller*, 583 N.W.2d at 742.

Given Minnesota caselaw showing that evidence of a prior impaired-driving conviction is highly prejudicial in a current impaired-driving case, the state's failure to carry its burden on the third *Ramey* prong, and the fact that Moodie's guilt was not conclusively proven, we conclude that the prosecutor's conduct was serious and prejudicial enough to impair Moodie's right to a fair trial. *See Johnson*, 616 N.W.2d at 727–28. In addition, the prosecutor's misconduct in closing contributes to an accumulation of errors that deprived Moodie of a fair trial. *See State v. Mayhorn,* 720 N.W.2d 776, 792 (Minn. 2006) (concluding that the cumulative effect of prosecutorial misconduct and evidentiary errors denied the defendant's right to a fair trial). Even when evidence of guilt is strong, multiple incidents and types of prosecutorial misconduct can deprive defendants of a fair trial. *Id.* at 791.

Because the cumulative effect of these errors deprived Moodie of her right to a fair trial, we reverse and remand for a new trial.

**Reversed and remanded.**