*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0241**

State of Minnesota,
Respondent,

vs.

Richard William Reynolds, Jr.,
Appellant.

**Filed January 19, 2016
Reversed
Rodenberg, Judge
Dissenting, Schellhas, Judge**

Kanabec County District Court
File No. 33-CR-14-87

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Barbara McFadden, Kanabec County Attorney, Mora, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Schellhas, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

On appeal from his conviction for failure to register a new primary address as a predatory offender, appellant Richard William Reynolds, Jr., argues that the district court

legally erred in convicting him of knowingly violating the predatory-offender-registration statute despite finding as a fact that appellant believed that his primary address remained so after a breakup with his then-girlfriend, with whom he resided. We reverse.

**FACTS**

Appellant is required to register as a predatory offender for life.[1] He successfully fulfilled his registration requirements from 2004 to 2013. From September 11, 2013 to January 28, 2014, appellant's registered primary address was in Grasston (Grasston residence).[2] Appellant's then-girlfriend, D.M.W., owns the Grasston residence. Appellant's registered secondary address at all relevant times was his parents' residence in Mora (Mora residence).

On December 25, 2013, appellant and D.M.W. disputed how they would celebrate Christmas. D.M.W. told appellant that they would be "done" if he left the Grasston residence. Appellant left anyway. Appellant called D.M.W. that evening asking if he could return to the Grasston residence, and she said, "No, we're done." Appellant later returned to the Grasston residence, and D.M.W. again told him that their relationship was over. Appellant took some of his clothes, and went to stay at the Mora residence. He left other belongings at the Grasston residence. Because he and D.M.W. had broken up and reconciled several times earlier, appellant did not notify authorities that he was not staying at his registered primary address.

---

[1] The state submitted no brief on appeal, and we determine this appeal on the merits under Minn. R. Civ. App. P. 142.03. We derive our understanding of the state's legal arguments from the district court record.

[2] At all relevant times, appellant provided authorities with accurate street addresses, but we do not include them because the exact addresses are not at issue in this appeal.

On January 7, 2014, Kanabec County Deputy Justin Frisch investigated appellant's compliance with his registration requirement. D.M.W. told Deputy Frisch that appellant left the Grasston residence on December 25. Deputy Frisch then located and spoke with appellant at the Mora residence, his secondary address, and confirmed that appellant had been staying there since December 25. Deputy Frisch testified that appellant told Deputy Frisch that he would register the Mora residence as his primary address that same day.[3] Appellant testified that he realized in late January 2014 that he and D.M.W. would not reconcile. He then found and registered a new primary address.

The state charged appellant with two counts of knowingly failing to register as a predatory offender in violation of Minn. Stat. § 243.166, subd. 5(a) (2012). The first count was based on appellant's failure to register the Mora residence as his primary address while he stayed there before finding and registering his new primary address. The second count was based on appellant's failure to notify law enforcement at least five days before he left the Grasston residence. Appellant waived his right to a jury trial and the case was tried to the court.

Deputy Frisch, D.M.W., appellant, and appellant's nephew (S.S.) testified at trial. Although appellant signed multiple forms stating that he understood his registration

---

[3] It is worth noting that the record reveals an unresolved factual question concerning whether appellant told Deputy Frisch that he would register the Mora residence as his primary address when the two spoke on January 10, 2014. Appellant disputed the deputy's testimony, and the question was not resolved by the district court in its findings. The state neither alleged nor argued at the district court that appellant's crime was his inaction after January 10. Neither did the state file a brief on appeal. Accordingly, we do not consider a possible alternative finding of fact that the district court might have made, but did not make.

requirements, he testified that he still considered the Grasston residence his primary address while he was staying at the Mora residence after December 25. He and D.M.W. "had broken up in the past and got back together, and that's what [appellant] was figuring was going to happen this time too." S.S. testified that he knew appellant and D.M.W. had broken up on December 25, but that he was under the impression then that they would eventually reconcile. D.M.W. testified that "there was no chance" that she would reconcile with appellant.

The district court's findings of fact after trial are unchallenged on appeal. It found that appellant "believed the [Grasston] address was his primary address the entire time he stayed at the Mora residence because he thought he and [D.M.W.] may reconcile." The district court nevertheless convicted appellant of count one, reasoning that appellant knowingly violated the statute because "he left his primary address, no longer had a primary address, and failed to notify law enforcement of this within 24 hours." The district court acquitted appellant of count two, reasoning that appellant "unexpectedly lost his primary address on Christmas Day" and "could not have given prior notice of being kicked out." This appeal followed.

## DECISION

Appellant argues that his conviction must be reversed because the district court legally erred in concluding that he knowingly violated the registration statute despite finding as a fact that appellant "believed the [Grasston] address [remained] his primary address." Appellant's arguments turn on interpretation of Minn. Stat. § 243.166, subd. 5(a). "Construction of a criminal statute is a question of law," which is reviewed de

novo. *State v. Colvin*, 645 N.W.2d 449, 452 (Minn. 2002). "A statute must be construed according to its plain language. If ambiguous, the intent of the legislature controls. A rule of strict construction applies to penal statutes, and all reasonable doubt concerning legislative intent should be resolved in favor of the defendant." *Id.* (citations omitted).

When a person required to register as a predatory offender "leaves a primary address and does not have a new primary address," the law requires that person to register with police within 24 hours. Minn. Stat. § 243.166, subd. 3a(a) (2014). The district court correctly noted that the statute does not require a predatory offender to register every time he leaves his primary address, but only when he "no longer has a primary address." *Id.* The statute defines "primary address" as "the mailing address of the person's dwelling." *Id.*, subd. 1a(g) (2014). It defines "secondary address" as "the mailing address of any place where the person regularly or occasionally stays overnight when not staying at the person's primary address." *Id.*, subd. 1a(i) (2014). A person is guilty of a felony only when he "knowingly violates any of [the section's] provisions." *Id.*, subd. 5(a) (2014).

The elements of the offense of which appellant was convicted are: (1) appellant is a person required to register as a predatory offender, (2) appellant knowingly violated the requirement to register, (3) the time period during which appellant was required to register had not elapsed, and (4) appellant's conduct took place on or about December 24 or 25, 2013, in Kanabec County. *See id.*; 10 *Minnesota Practice*, CRIMJIG 12.102 (6th ed. 2015). Appellant contested only the second element, whether he knowingly violated

5

a registration requirement.[4]  The issue on appeal, therefore, is whether appellant can be convicted of *knowingly* violating the law under the facts as found by the district court.

Minnesota Statutes provide that "'know' requires only that the actor believes that the specified fact exists."  Minn. Stat. § 609.02, subd. 9(2) (2012).  "Knowingly" is not defined in the criminal code.

Appellant argues that "'knowingly' means that [he] must know that his conduct would violate the statute" and "require[s] [him] to perceive directly that [his] conduct violated 243.166."  Therefore, appellant argues, his conviction must be reversed, because the district court found as a fact that he did not know his conduct violated the law, but instead still considered the Grasston residence his primary address during the relevant time period because he believed that he and D.M.W. would reconcile.

In *State v. Watkins*, 840 N.W.2d 21 (Minn. 2013), the Minnesota Supreme Court considered the meaning of the term "knowingly violates" in the context of the domestic-abuse-no-contact-order (DANCO) statute.  At the time of the offenses in *Watkins*, Minn. Stat. § 629.75, subd. 2(d)(1) provided that it was a felony "if the person knowingly violates this subdivision:  (1) within ten years of the first of two or more previous

---

[4] The complaint did not recite that appellant had registered the Mora residence as a secondary address, and alleged a knowing violation of a registration requirement without specifying whether the charge was premised on appellant having had no primary address after December 25, or was premised on appellant not having timely registered the Mora residence as primary.  At trial, the state argued that appellant was required to have registered the Mora residence as primary when it became the place where he was "currently living."  Regardless of the precise registration requirement the state claims was violated, Minn. Stat. § 243.166 requires proof that the requirement was knowingly violated.

qualified domestic violence-related offense convictions." *Id.* at 29.[5] The supreme court held that "'knowingly violates' . . . require[s] the defendant to perceive directly that [his conduct] violated the DANCO statute." *Watkins*, 840 N.W.2d at 29. Accordingly, the supreme court held that a "reasonable belief that [his conduct] did not violate the DANCO could negate the mental state of the charged offense." *Id.* Distinguishing between knowledge of the existence of a DANCO order and knowingly violating that order, the supreme court held that "[t]he question of whether Watkins knowingly violated the DANCO statute turns on Watkins' knowledge that his conduct violated the DANCO at the time of the offense," which is a question of fact. *Id.* at 29-30.

In *State v. Gunderson*, 812 N.W.2d 156 (Minn. App. 2012), a precursor to *Watkins*, we considered the meaning of the term "knowingly violates" in the context of the harassment-restraining-order (HRO) statute. Under the HRO statute in effect at the time, misdemeanor criminal liability was imposed when the person knew of the order and violated it. Minn. Stat. § 609.748, subd. 6(b) (2010). The gross-misdemeanor and felony sections of the statute required proof of a different mental state, imposing enhanced criminal liability only when the person knowingly violated the order. *Id.*, subd. 6(c)-(d) (2010). In *Gunderson*, we held that "knowingly violates" means "that Gunderson was aware that [his specific conduct] was prohibited." *Id.* at 161. We relied on the plain meaning of "knowingly" to reach our holding. *Id.* at 160-61.

---

[5] After the offenses occurred, the Minnesota legislature amended Minn. Stat. § 629.75, subd. 2(d)(1), removing the word "knowingly." 2013 Minn. Laws ch. 47, § 5.

7

The Minnesota legislature amended the HRO and DANCO statutes effective August 1, 2013. 2013 Minn. Laws ch. 47, §§ 4, 5. The amended statutes removed "knowingly" from the gross-misdemeanor and felony sections. *Id.* Tellingly, the legislature did not reject the definition of "knowingly" employed by this court in *Gunderson* and by the supreme court in *Watkins*. Instead, and apparently content with the judicial interpretation of "knowingly" to define the mens rea requirements of Minnesota criminal statutes, the legislature removed that mens rea requirement.[6] The rule of law in *Watkins* and *Gunderson*, however, gives meaning to the distinction between knowing of the existence of something (e.g., a registration requirement, DANCO, or HRO) and knowing that action or inaction in a particular factual circumstance violates a statute.

Here, the district court found as a fact that appellant "believed the [Grasston] address was his primary address the entire time he stayed at the Mora residence because he thought he and [D.M.W.] may reconcile." Appellant cannot have knowingly failed to register after a change of primary address where he did not believe his primary address to have changed. We defer to district court findings of fact, especially those concerning credibility determinations. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*,

---

[6] Minnesota appellate courts have historically addressed the criminal code's imprecise mens rea requirements and whether and how mens rea attaches to various elements of particular crimes. *See generally* Ted Sampsell-Jones, *Mens Rea in Minnesota and the Model Penal Code*, 39 Wm. Mitchell L. Rev. 1457 (2013). Professor Sampsell-Jones notes that, although the drafters of the 1963 Minnesota criminal code "created more straightforward definitions of common mens rea terms," the existing code has created confusion in Minnesota's mens rea jurisprudence, in part because the code does not distinguish between the multiple elements of crimes and what mens rea attaches to them. *Id.* at 1463-69.

508 U.S. 366, 113 S. Ct. 2130 (1993). And there is no argument on appeal that the district court's findings of fact are unsupported by the record.

We are mindful of a number of unpublished opinions of this court affirming convictions under offender-registration statutes in the face of challenges to the sufficiency of the evidence concerning the mental state of the offender who is required to register. None of those cases involve the issue with which we are concerned here. This appeal involves a purely legal issue: Whether a person required to register as a predatory offender may be lawfully convicted of knowingly violating a registration requirement where there is an unchallenged finding of fact that the offender believed facts which, if true, would not require that he notify authorities.

The district court discussed the registration requirements of § 243.166, subd. 5(a), and concluded that appellant "is guilty even if he was confused between the statutory definition of primary address and his understanding of his residence." The district court observed that "[i]t is not a defense if a person does not know what words or terms in a statute mean."[7] But this is not a case where appellant argues that his mistake of law absolves him of responsibility. The statute requires proof that appellant "perceive[d] directly" that his conduct violated the statute. *See Watkins*, 840 N.W.2d at 29. And the

---

[7] The state's argument to the district court relied on the "perceives directly" standard. The state did not argue to the district court that appellant was guilty if he "knew or should have known" of the registration requirement. Instead, the state plainly argued below that appellant believed the Grasston residence was no longer his primary address and that he *knew* he had to register a new address during the relevant period. But the district court, in finding as a fact that appellant believed that the Grasston residence was still his primary address, rejected the state's argument.

9

district court found no such thing. The district court found as a fact that appellant believed that the Grasston residence was his primary address at all relevant times.

We defer to the district court's unchallenged finding of fact that appellant believed the Grasston residence was his primary address during the time he was temporarily residing at the Mora residence. That finding of fact supports no legal conclusion other than that appellant did not knowingly violate the statute. And this is not a situation where appellant left his primary address to stay at an unregistered address, making it difficult for law enforcement to find him. Deputy Frisch found appellant staying at his registered secondary address.

Because appellant "believed the [Grasston] address was his primary address the entire time he stayed at the Mora residence," he did not knowingly violate a registration requirement.

**Reversed.**

**SCHELLHAS**, Judge (dissenting)

I respectfully disagree with the majority's reversal of Reynolds's conviction on the basis that Reynolds did not knowingly violate the predatory-offender registration statute.

The district court issued detailed findings of fact, conclusions of law, and an order following Reynolds's bench trial. Regarding Reynolds's knowledge of his obligations under the predatory-offender registration statute and his state of mind, the court found that

> 1. . . . Reynolds . . . stipulate[d] and agree[d] that between December 24, 2013 and January 17, 2014 he was required to register with the State as a predatory offender under Minnesota Statutes section 243.166. . . .
>
> 2. . . . [Reynolds] moved in with [D.M.W.] at [her] [Grasston] residence on September 9, 2013. . . . [Reynolds] registered the [Grasston] residence as his primary address as he was required to do.
>
> 3. . . . On December 25, 2013 . . . , [D.M.W.] threatened to end their relationship if [Reynolds] left the home. [Reynolds] nevertheless left to go to his parents' home. He called [D.M.W.] around 8:00 p.m. to ask if he could return. [D.M.W.] told him he could not. [Reynolds] showed up at the home anyway, but [D.M.W.] insisted their relationship was over. [D.M.W.] allowed [Reynolds] to gather some personal belongings before he left her home. According to [D.M.W.] she never told [Reynolds] they could try to work things out at a later date.
>
> 4. [Reynolds] confirmed at trial . . . that [D.M.W.] refused to allow him back into her home [after he left on December 25, 2013]. After collecting a few belongings, [Reynolds] returned to his parents' home to stay that night. [Reynolds] had previously registered their residence as a secondary address, as he was required to do.

5. [Reynolds] testified that he still considered the [Grasston] residence his primary address on December 25, 2013 even though [D.M.W.] had ended their relationship and kicked him out. He remembered that they had broken up in the past but later reconciled. [Reynolds] believed this would happen again. [D.M.W.] testified that she had asked him before he left on Christmas Day to return the next day to pick up the rest of his belongings. He did not do so. [Reynolds] instead came several days later to retrieve his woodstove, various tools, a toolbox, and other personal items. At no point during this visit did he and [D.M.W.] discuss getting back together.

. . . .

7. [Reynolds] claims he tried to talk with [D.M.W.] several times after December 25, 2013. She declined at first but then sometime shortly after New Year's Day began talking with him more and more. [Reynolds] admits that [D.M.W.] told him she did not wish to reconcile, however. [Reynolds] stayed at his parents' home at the Mora residence during this entire period.

8. On January 7, 2014 Kanabec County Deputy Justin Frisch received an anonymous phone call from someone who said that [Reynolds] was not residing at his primary address. Deputy Frisch confirmed that [Reynolds] had to register and the [Grasston] residence was registered as his primary address. [Deputy Frisch] reported to the [Grasston] residence to speak with [Reynolds]. The residents there told the officer that [Reynolds] had left on Christmas Day. They said [Reynolds] had only returned once since then to retrieve some of his belongings. Deputy Frisch then went to the Mora residence on January 10, 2014. He spoke with [Reynolds] there. [Reynolds] admitted he last lived at the [Grasston] residence on December 25, 2013. . . .

9. At some point in late January 2014, [Reynolds] realized he and [D.M.W.] were not going to reconcile this time. He found a new place to live, left his parents' Mora residence, and registered his new residence as his new primary address. [Reynolds] never registered the Mora residence as his primary address. He believed he did not need

to do so because he had already registered it as his secondary address. In fact, he believed the [Grasston] address was his primary address the entire time he stayed at the Mora residence because he thought he and [D.M.W.] may reconcile.

. . . .

11. The Court . . . received as Exhibit 5 a separate packet of registration documents. The first form is a December 24, 2007 cover letter addressed to [Reynolds] that informs him about his need to register and provides him an Address Verification Form. The packet also contains a form entitled Duty to Register that has 28 numbered paragraphs on two pages. [Reynolds] initialed next to each paragraph, indicating that [Reynolds] has read and understood each one. Paragraph 14 states, "I understand that if I do not have a primary address I must report to the law enforcement authority with jurisdiction in the area where I will be staying within 24 hours of leaving my former primary address."

The district court also included findings in its conclusions of law. We treat these "conclusions of law" as findings of fact. *See Graphic Arts Educ. Found., Inc. v. State*, 240 Minn. 143, 145−46, 59 N.W.2d 841, 844 (1953) ("[A] fact found by the court, although expressed as a conclusion of law, will be treated upon appeal as a finding of fact."); *see also Bissell v. Bissell*, 291 Minn. 348, 351 n.1, 191 N.W.2d 425, 427 n.1 (1971) (quoting *Graphic Arts*, 240 Minn. at 145−46, 59 N.W.2d at 844). Accordingly, we treat the following as additional findings:

3. . . . [Reynolds] . . . knew and understood he would violate the statute if he left his primary address, no longer had a primary address, and failed to notify law enforcement of this within 24 hours.

. . . .

6. In this case, [Reynolds] left his primary residence—the [Grasston] residence where he had been living with [D.M.W.]. He went to visit his parents for Christmas at the Mora residence. He did not have to register immediately. However, he called [D.M.W.] later that night to ask if he could return home. [D.M.W.] honored her promise and said that he could not return to her home because they were finished. As a result, [Reynolds] no longer had a primary address because [D.M.W.] had kicked him out. . . . It does not matter if [Reynolds] thought he and [D.M.W.] would get back together at a later date. *The fact of the matter is that [D.M.W.] specifically told him that he was not welcome at her home. This means [Reynolds] no longer had a primary address. . . .*

7. . . . [Reynolds] may not have subjectively believed he had to tell law enforcement where he was staying within 24 hours after [D.M.W.] kicked him out. But *that was when he no longer had a primary address . . . .*

. . . .

10. . . . [D.M.W.] directly and specifically kicked [Reynolds] out. She told him this on Christmas Day and repeated this several times afterwards. *Since [Reynolds] . . . actually lost his primary address and knew or should have known that he lost his primary address*, subdivision 3a applies. . . .

11. [Reynolds] complied with the registration law for years. [Reynolds] was obviously confused about what the law required him to do in this specific fact situation. . . . He did not know that his situation required him to notify law enforcement within 24 hours of being kicked out of [D.M.W.]'s home . . . .

(Emphasis added.)

Based on the district court's finding that Reynolds "believed the [Grasston] address was his primary address the entire time he stayed at the Mora residence because he thought he and [D.M.W.] may reconcile," the majority concludes that "[Reynolds]

D-4

cannot have knowingly failed to register after a change of primary address where he did not believe his primary address to have changed." The majority cites *State v. Watkins*, 840 N.W.2d 21, 29−30 (Minn. 2013), and *State v. Gunderson*, 812 N.W.2d 156, 160−61 (Minn. App. 2012), as support for its conclusion. I respectfully disagree that those cases support reversal here. Both *Watkins* and *Gunderson* arose out of convictions of violating court orders—in *Watkins* a domestic-abuse no-contact order and in *Gunderson* a harassment restraining order. *See Watkins*, 840 N.W.2d at 23; *Gunderson*, 812 N.W.2d at 158. In both cases, the district court conducted a jury trial and failed to instruct the jury on the "knowingly" element of the charge. *See Watkins*, 840 N.W.2d at 25; *Gunderson*, 812 N.W.2d at 161.

In this case, the district court conducted a bench trial and found that Reynolds lost his primary address when D.M.W. kicked him out of her home on Christmas Day 2013; that he "knew or should have known that he lost his primary address"; and that he "knew and understood he would violate the statute if he left his primary address, no longer had a primary address, and failed to notify law enforcement of this within 24 hours." The court cited and discussed *Watkins* and *Gunderson*, stating that "[a] person must 'knowingly violate' section 243.166 to commit a crime. This means he must be aware that the statute prohibits the action he takes." The court concluded that "[i]t does not matter if [Reynolds] thought he and [D.M.W.] would get back together at a later date."

No published caselaw defines "knowingly" in the predatory-offender registration statute. Although unpublished decisions of this court are not precedential, Minn. Stat. § 480A.08, subd. 3(c) (2014), no unpublished decision addresses whether a finding that a

D-5

defendant either knew or should have known is sufficient to satisfy "knowingly" in the predatory-offender registration statute. *See State v. Pederson*, No. A14-1849, 2015 WL 5089026, at *3−4 (Minn. App. Aug. 31, 2015) (noting that no published caselaw defines "knowingly" in predatory-offender registration statute, citing *Watkins* and *Gunderson*, and rejecting insufficiency-of-evidence argument that Pederson did not "perceive directly" that his conduct violated the statute), *review denied* (Minn. Oct. 28, 2015); *State v. Howard*, No. A12-1801, 2013 WL 6050327, at *4−5 (Minn. App. Nov. 18, 2013) (concluding that because Howard had bench trial on charge of violating predatory-offender registration statute, *Gunderson* had no application to case; noting that district court was fully aware of and applied "knowingly" element to case; and rejecting argument that court misconstrued "knowingly" element); *State v. Kotlov*, No. A12-1073, 2013 WL 2301825, at *3−4 (Minn. App. May 28, 2013) (citing *Gunderson* and rejecting argument that factual basis underlying plea was insufficient to support conviction that Kotlov knowingly violated predatory-offender registration statute), *review denied* (Minn. Aug. 20, 2013); *State v. Whitelaw*, No. A12-0522, 2013 WL 399341, at *2 (Minn. App. Feb. 4, 2013) (citing *Gunderson* and rejecting argument that evidence was insufficient to prove that Whitelaw knowingly violated predatory-offender registration requirements).

In this case, I agree with the district court that Reynolds's confusion about his statutory registration requirements does not constitute a legal excuse, and I would affirm his conviction.