**STATE of Minnesota, Appellant,**

v.

**Richard Joseph JACOBSON, Respondent.**

No. A03–1782.

Supreme Court of Minnesota.

June 9, 2005.

Michael A. Hatch, Minnesota Attorney General, St. Paul, MN, James C. Backstrom, Dakota County Attorney, Phillip D. Prokopowicz, Chief Deputy, Hastings, MN, for Appellant.

Joseph S. Friedberg, Lisa Lodin Peralta, Minneapolis, MN, for Respondent.

## OPINION

BLATZ, Chief Justice.

This case comes to us on appeal from questions certified to the Minnesota Court of Appeals from the Dakota County District Court regarding two mistake of law defenses—reliance on advice of counsel and reliance on an official interpretation of the law. Respondent, Richard Joseph Jacobson, was charged with conspiracy to procure unlawful voting and conspiracy to commit forgery. At a pretrial hearing, the state brought a motion seeking to exclude evidence concerning an unrelated election law complaint and the response to that complaint by the Dakota County Attorney's Office. The district court granted the state's motion, barred Jacobson from asserting the defenses of reliance on advice of counsel and reliance on an official interpretation of the law, and certified two questions to the court of appeals. The court of appeals held that the defenses of good faith reliance on the advice of counsel and good faith reliance on an official interpretation of the law are "available defense[s] to a defendant charged with a specific intent crime" and that the district court prematurely concluded that any reliance was unreasonable. *State v. Jacobson,* 681 N.W.2d 398, 410 (Minn.App.2004). The court of appeals further held that Jacobson is entitled to present evidence of his reliance as part of his due process right to present a defense and explain his conduct. *Id.* We hold that evidence of Jacobson's mistake of law is admissible because it is relevant to whether he intended to break the law—an element of the conspiracy charges.

At the time of the events alleged in the complaint, Jacobson was the owner and operator of "Jakes," a strip club located at 15981 Clayton Avenue in Coates, Minnesota. For several years, Jakes has been the subject of substantial local legal controversy.[1] On October 11, 2002, the Dakota County Treasurer–Auditor's Office reported that it received 93 Minnesota voter registration cards and voter change of address cards listing 15981 Clayton Avenue, Coates, Minnesota—Jakes' address—as the voters' place of residence.[2] While the

---

1. On October 4, 2002, a federal district court filed an order closing Jakes. The federal district court specifically found that Jakes had previously been closed by federal court order for operating a sexually-oriented business in violation of city ordinances and that, after the reopening of the business, the nature of the business continued to violate city ordinances.

2. We note that Coates has a population of approximately 163 people. U.S. Census Bureau Fact Sheet, Census 2000 Demographic Profile Highlights, at http://factfinder.cen-

registrants signed the voter registration cards certifying that they "maintain[ed] residence at the address given on the registration form," Dakota County property tax records indicate that Jakes is a "bar/tavern" with four bathrooms and no bedrooms.

On October 14, 2002, investigating officers executed a search warrant for Jakes and a vehicle registered to Jacobson. While inside Jakes, the officers found 13 blank voter registration forms and two completed voter registration cards listing 15981 Clayton Avenue, Coates, Minnesota as the voters' place of residence. In the vehicle, officers found 26 blank voter registration forms and a highlighted copy of voter registration statutes. The officers found no evidence that anyone was residing at Jakes. Jacobson was subsequently charged with conspiracy to procure unlawful voting in violation of Minn.Stat. § 204C.14(e) (2004) and Minn.Stat. § 609.175 (2004), and conspiracy to commit forgery in violation of Minn.Stat. § 609.63, subd. 1(6) (2004), and § 609.175. Jacobson pleaded not guilty to the charges.

Subsequent to his pleas of not guilty, Jacobson filed a motion to dismiss on due process grounds. In connection with the motion, Jacobson submitted an affidavit stating that for the past several years he had retained an attorney, Randall Tigue, to attend to various civil matters. Jacobson averred that, in July 2002, Tigue showed him a copy of Minnesota's voting and election laws and a letter from Chief Deputy Dakota County Attorney Phillip Prokopowicz to Minneapolis Assistant Clerk and Director of Elections Suzanne Griffin. The letter to Griffin, dated June 4, 2002, concerned possible violations of voter registration and election laws by Minneapolis police officers who registered to vote using their work addresses rather than their home addresses. The matter had been referred by the Hennepin County Attorney's Office to the Dakota County Attorney's Office, presumably because of a conflict of interest. In the letter, Chief Deputy Prokopowicz informed the city that the Dakota County Attorney's Office had concluded that there was no criminal wrongdoing by the police officers and thus the office was closing its investigation of the matter.[3] Jacobson asserted in his affidavit that "[w]ith Mr. Tigue's counsel and [advice], and relying on a review of Minnesota's election laws and the letter by Mr. Prokopowicz," he and several of his employees "devised a plan to get people to register to vote using Jakes as a residence."

In response to Jacobson's assertions in his affidavit, the state filed a motion to exclude (1) "any documentation, testimony, or reference to an election law complaint made by [Suzanne] Griffin, Minneapolis Assistant City Clerk–Director of Elections, regarding alleged violations of voter registration election laws by various Minne-

sus.gov (last visited June 2, 2005). The record in this case reflects that the city is governed by a four-member city council and a mayor. In November 2002, two council seats and the mayor position were on the ballot. All three positions were contested.

3. After reading a *Star Tribune* article regarding the investigation of the Minneapolis police officers' possible violation of voter registration and election laws in which Prokopowicz was quoted, Tigue contacted the Dakota County Attorney's Office and requested a copy of any written opinion relating to the matter. In response, Prokopowicz sent him a copy of the letter he had written to the assistant city clerk. Jacobson stipulated that, with the exception of Tigue's written request for a copy of any written opinion on the police officer matter, there was no other contact with the county attorney's office regarding the registration or election laws or the legitimacy of Jacobson's plan.

apolis police officers" and (2) "any documentation, testimony, or reference to the disposition of the * * * complaint by the Dakota County Attorney's Office." At the hearing on the state's motion to exclude, the state clarified that its motion included Tigue's testimony regarding Prokopowicz's letter, any advice Tigue may have given Jacobson based on the letter, and any reference to the advice. The state argued in its memorandum that this evidence was irrelevant and unduly prejudicial. In addition, the state argued that there is no legal defense of advice of legal counsel and that even if the defenses of reliance on the advice of legal counsel and reliance on an official interpretation of the law exist as a general matter, the defenses could not be asserted in the instant case because these defenses require a showing that the defendant used due diligence and care.

Jacobson opposed the state's motion on five separate grounds. He argued that the challenged evidence (1) was relevant to the issue of his intent; (2) was relevant to establish the defenses of reliance on the advice of counsel and reliance on an official interpretation of the law; (3) had significant probative value and no basis existed to exclude it on grounds of confusion; (4) was not hearsay, or alternatively, it was admissible as an exception to the hearsay rule; and (5) had to be admitted to protect Jacobson's constitutional right to present a defense.

The district court granted the state's motion to exclude the evidence at issue and barred Jacobson from asserting the defenses of reliance on advice of counsel and reliance on an official interpretation of the law. Without directly addressing whether the defenses exist in Minnesota, the court concluded that, under the circumstances, Jacobson could not assert the defenses because his reliance on advice of counsel and reliance on the Dakota County Chief Deputy's letter as an official interpretation of the law was "unreasonable." The court further concluded that the excluded evidence was irrelevant because the state "does not have to prove that the Defendant and others believed those registering to vote would not be criminally prosecuted."

After ruling in favor of the state, at Jacobson's request pursuant to Minn. R.Crim. P. 28.03, the district court stayed further proceedings and certified to the court of appeals two questions as important and doubtful:

1. Whether the defenses of reliance on advice of counsel and on an official interpretation are available to the Defendant under Minnesota law?

2. Whether the defenses of reliance on advice of counsel and on an official interpretation are available to defendant as a matter of law given the District Court's finding that any reliance was not reasonable?

The court of appeals answered both questions in the affirmative. *Jacobson,* 681 N.W.2d at 404–07. The court of appeals also concluded that Jacobson is entitled to present evidence of his reliance as part of his due process right to present a defense and explain his conduct. *Id.* at 408. The state petitioned this court for review of the court of appeals' decision, which we granted.

■ Under Minn. R.Crim. P. 28.03, a district court, at the defendant's request or with the defendant's consent, shall certify to the court of appeals any question which is "so important or doubtful as to require a decision of the Court of Appeals." A certified question is a question of law which this court reviews de novo. *State v. Tennin,* 674 N.W.2d 403, 406 (Minn.2004).

The questions certified in this case, although framed in terms of the "defenses"

of reliance on advice of counsel and reliance on an official interpretation, are fundamentally evidentiary issues relating to Jacobson's intent. Accordingly, we will focus our analysis of these two questions on the evidentiary issues. *See State v. Larivee*, 656 N.W.2d 226, 228 (Minn.2003) (stating that when the "district court fails to properly frame the issues, the appellate court has the authority to clarify the questions certified").

■ Jacobson has been charged with conspiracy to procure unlawful voting and conspiracy to commit forgery. Under Minnesota law, conspiracy occurs when one "conspires with another to commit a crime" and requires proof that "in furtherance of the conspiracy one or more of the parties does some overt act." Minn.Stat. § 609.175, subd. 2. The state argues that the intent required under this statute is intent to commit the *underlying acts.* However, in explaining the intent required to establish conspiracy we have stated: "A conscious and intentional purpose *to break the law* is an essential element of the crime of conspiracy * * *." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn.2001) (emphasis added). Similarly, CRIMJIG 5.11 states that the actions of the conspirators "must be the result of a preconceived and mutual intention *to commit a crime.*" 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 5.11 (4th ed. 1999) (emphasis added). We reaffirm our statement in *Kuhnau* and hold that the intent necessary to prove conspiracy is the intent to "break the law." [4]

■ As a general rule, mistake or ignorance of the law is not a defense.

*Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991); *State v. King*, 257 N.W.2d 693, 697 (Minn. 1977). It is assumed that "[a]ll members of an ordered society are presumed either to know the law or, at least, to have acquainted themselves with those laws that are likely to affect their usual activities." *King*, 257 N.W.2d at 697–98. But, a mistake of law "defense" has been recognized in limited circumstances when the mistake "negatives the existence of a mental state essential to the crime charged." [5] 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.6(a), at 395 (2d ed. 2003). For example, in *Cheek v. United States*, the United States Supreme Court determined that when a federal tax law requires "willfulness" as an element of the offense, the defendant's good faith belief that he is not violating the law could negate intent because "willfully," as used in certain federal tax laws, requires the specific intent to violate the law. 498 U.S. at 200, 111 S.Ct. 604.

■ A mistake of law that negates the mental state of the charged offense is not a "defense" in the sense that the defendant carries the burden of persuasion. Rather the evidence relates to disproving or negating an element of the crime charged. In this circumstance, a mistake of law "defense" is actually an application of the principle that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see* LaFave, *supra,*

---

4. In so holding, we recognize that the court of appeals' statement that the requisite intent was "intent to conspire," *Jacobson*, 681 N.W.2d at 405, is incorrect.

5. The state conceded at oral argument that, if the intent for conspiracy requires intent to break the law, the excluded evidence would be admissible, subject to the usual rules of evidence.

§ 5.6(a), at 395 ("Instead of speaking of ignorance or mistake of fact or law as a defense, it would be just as easy to note simply that the defendant cannot be convicted when it is shown that he does not have the mental state required by law for the commission of that particular offense."); 1 Paul H. Robinson, *Criminal Law Defenses* § 62(b), at 248 (1984); *cf. State v. Hage,* 595 N.W.2d 200, 205 (Minn. 1999) (addressing the allocation of the burden of proof for defenses and recognizing that a defendant cannot "be required to shoulder the burden of persuasion for her proffered defense when the mitigating circumstance or issue disproves or negates an element of the crime charged").

█ Here, Jacobson's mistake of law is relevant to negate the intent for the crime charged because conspiracy requires proof of a "conscious and intentional purpose to break the law." *Kuhnau,* 622 N.W.2d at 556. Thus, if Jacobson believed in good faith that it was legal to procure others to fill out voter registration cards listing Jakes as their residence, he would not have the requisite intent for conspiracy. We therefore hold that evidence relating to a defendant's misunderstanding of the law is admissible when relevant to whether the defendant had the intent required for the charged offense.

█ We now turn to the state's argument that, even if the "defenses" of reliance on advice of counsel and reliance on an official interpretation of the law exist in Minnesota, any reliance by a defendant must be reasonable in order to assert the defenses at trial. The state argues that Jacobson is precluded from using any evidence of his reliance at trial because the district court found that Jacobson's reliance on advice of counsel and on an official interpretation of the law was unreasonable. We disagree. As we stated above, the "defenses" at issue here are fundamentally evidentiary issues relating to the defendant's mental state. Because the existence of intent is a question of fact, it must be submitted to the jury. *Morissette v. United States,* 342 U.S. 246, 274, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

In *Cheek,* the Supreme Court stated that "[c]haracterizing a particular belief as not objectively reasonable transforms the inquiry into a legal one and would prevent the jury from considering it." 498 U.S. at 203, 111 S.Ct. 604. In the Court's view, "forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision." *Id.* Thus, the Court in *Cheek* held that the defendant's good faith belief that the tax laws did not impose any duties on him did not have to be objectively reasonable in order to be considered by the jury as evidence negating his intent. *Id.* Similarly, evidence of Jacobson's mistake of law based on his reliance on the advice of his attorney and on the letter from Chief Deputy Dakota County Attorney Prokopowicz is relevant to the issue of Jacobson's intent and thus need not be objectively reasonable to be presented to the jury. Of course, as the Court noted in *Cheek,* the more unreasonable the beliefs, "the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties." 498 U.S. at 203–04, 111 S.Ct. 604.

█ We therefore hold that, on the record before us and based on the pending charges, Jacobson has a right to present evidence that he relied on Tigue's advice and on Chief Deputy Dakota County Attorney Prokopowicz's letter regarding the Minneapolis police officer matter. Our holding is grounded in constitutional law and our recognition that it is "fundamental that criminal defendants have a due process right to explain their conduct to a jury." *State v. Brechon,* 352 N.W.2d 745,

751 (Minn.1984); *see also In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (stating that "an opportunity to be heard in his defense" is "basic in our system of jurisprudence"). While the district court can impose limits on the testimony of a defendant, the limits must not trample on the defendant's right to a fair trial. *Brechon,* 352 N.W.2d at 751 (recognizing the district court's ability to control the trial, but disapproving of the district court's broad exclusionary order "because it raises serious constitutional questions relating to a defendant's right to testify").

Affirmed.