STATE of Minnesota, Respondent,

v.

Juanel Anthony MIKULAK, Appellant.

A15-1701

Supreme Court of Minnesota.

Filed: November 15, 2017

Cathryn Middlebrook, Chief Appellate Public Defender, Veronica M. Surges, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, Saint Paul, Minnesota; David Torgelson, Renville County Attorney, Glen Jacobsen, Assistant County Attorney, Olivia, Minnesota; and Scott A. Hersey, Special Assistant Renville County Attorney, Saint Paul, Minnesota for respondent.

## OPINION

ANDERSON, Justice.

At a plea hearing, appellant Juanel Anthony Mikulak pleaded guilty to the offense of knowingly violating a provision of the predatory offender registration statute, Minn. Stat. § 243.166, subd. 5(a) (2016). As part of the factual basis for his guilty plea, Mikulak told the district court that he "now" understood that subdivision 3a of the statute required him to register with law enforcement within 24 hours of entering Renville County. On appeal, Mikulak argued that the factual basis for his guilty plea was inadequate because he made statements that negated the mens rea element of the charged offense—specifically, that when he entered Renville County, he believed that he had 1 week to register and that he did not remember the 24-hour reporting requirement. The court of appeals affirmed his conviction, reasoning that "ignorance of the law is no excuse." Because ignorance of the law is a defense when the charged offense prohibits a knowing violation of a statutory provision, we reverse the court of appeals and

remand to the district court for further proceedings consistent with this opinion.

## FACTS

As a result of a 2008 conviction, Mikulak is required to register under the predatory-offender-registration statute, Minn. Stat. § 243.166 (2016). In 2014, he moved in with L.M. at her residence in St. Cloud. Mikulak registered the St. Cloud address as his primary residence. At some point between late September and mid-October, Mikulak left the St. Cloud residence at L.M.'s request. After he left, Mikulak met with a Stearns County social worker and told her that he was homeless. Mikulak then contacted a friend, D.T., who agreed to pick up Mikulak from St. Cloud, drive him to her home in Renville County, and allow him to stay with her. According to D.T., Mikulak stayed at her home on October 16, 17, and 19. During that time, Mikulak never registered as a predatory offender in Renville County.[1]

On October 21, Mikulak was arrested and charged under Minn. Stat. § 243.166, subd. 5(a), which makes it a crime to "knowingly violate" any part of the predatory-offender-registration statute. Specifically, the State alleged that Mikulak knowingly violated subdivision 3a, paragraphs (a) and (c), which require a predatory offender who leaves a primary residence without obtaining a new primary residence to register within 24 hours of leaving the primary residence and within 24 hours of entering a new jurisdiction.

Mikulak moved to dismiss the charge for lack of probable cause. In response, the State submitted several documents without objection. These documents included an intake summary from the Stearns County

social worker, stating that on October 16, Mikulak told her that he had been homeless for a week. They also included a statement from D.T., stating that Mikulak stayed at her residence in Renville County on October 16, 17, and 19. Finally, the State submitted the predatory-offender-registration form that Mikulak signed in 2008 informing him of the 24-hour-registration requirement. The district court denied the motion to dismiss.

Two days later, Mikulak pleaded guilty to the offense of knowingly violating a provision of the predatory-offender-registration statute. As part of the factual basis for his guilty plea, Mikulak told the district court that he did not register as a predatory offender in Renville County "because [he] assumed [he] had a week" to do so. When the district court asked whether, after having discussed the case with defense counsel, Mikulak was satisfied that the 7-day registration period did not apply in his case, Mikulak replied, "Yeah, now I am." Mikulak also agreed that it was "a fair statement" that he had been informed of the 24-hour registration requirement in the past. Nevertheless, he affirmed that "at the time [he] moved down [to Renville County, he] didn't remember that that's what [he was] told." The district court accepted Mikulak's guilty plea and imposed a presumptive 36-month sentence.

Mikulak appealed, arguing that the factual basis for his guilty plea was inadequate because of his statements that negated the mens rea element of the charged offense—specifically, that when he entered Renville County, he believed that he had 1 week to register and did not remember the 24-hour reporting requirement. The court

---

1. When he arrived in Renville County, Mikulak visited the Sheriff's Department to proclaim his nationality in accordance with his membership in the Moorish Science Temple of America. However, Mikulak does not claim that this proclamation satisfied the registration requirements of Minn. Stat. § 243.166, subd. 3a.

of appeals affirmed, and we granted Mikulak's petition for review.

## ANALYSIS

### I.

■ Once a guilty plea has been entered, there is no absolute right to withdraw it. *Shorter v. State*, 511 N.W.2d 743, 746 (Minn. 1994). But a defendant may withdraw a guilty plea when withdrawal is necessary to correct a manifest injustice. Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice occurs when a plea is not accurate, voluntary, or intelligent. *Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997). The accuracy requirement protects the defendant from pleading guilty to a charge more serious than he could have been convicted of at trial. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). For a guilty plea to be accurate, a proper factual basis must be established. *State v. Theis*, 742 N.W.2d 643, 647 (Minn. 2007). Although a plea petition and colloquy may be supplemented by other evidence to establish the factual basis for a guilty plea, *Lussier v. State*, 821 N.W.2d 581, 589 (Minn. 2012), a factual basis is inadequate "when the defendant makes statements that negate an essential element of the charged crime because such statements are inconsistent with a plea of guilty," *State v. Iverson*, 664 N.W.2d 346, 350 (Minn. 2003).

■ Mikulak argues that he is entitled to withdraw his guilty plea because the plea's factual basis was inaccurate. The defendant bears the burden of establishing the facts that support his claim that the guilty plea is invalid. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). The validity of a guilty plea, however, is a question of law,

which we review de novo.[2] *Barrow v. State*, 862 N.W.2d 686, 689 (Minn. 2015).

■ Here, Mikulak pleaded guilty to Minn. Stat. § 243.166, subd. 5(a), which makes it a crime to "knowingly violate[ ]" the predatory offender registration statute. Although ignorance of the law generally does not excuse criminal liability, we have previously stated that when knowledge of the law is an element of the offense, mistake of law is a defense because it negates the existence of the required mental state. *State v. Watkins*, 840 N.W.2d 21, 30 (Minn. 2013).

■ The State's argument, as the State put it at oral argument, that the phrase "knowingly violates" in Minn. Stat. § 243.166, subd. 5(a), requires only that the defendant "knows or used to know" what the statute requires is unavailing. The plain text of the statute suggests that the defendant must know that he is violating the statute when the violation occurs. Specifically, "knowingly" is used as an adverb to modify "violates." Therefore, "knowingly" describes how the defendant must "violate" the statute to be convicted under Minn. Stat. § 243.166, subd. 5(a). *Cf. State v. Struzyk*, 869 N.W.2d 280, 293 n.1 (Minn. 2015) (Stras, J., concurring) ("By adding the adverb 'physically' to the word 'assaults,' the statute indicates that the act underlying the assault must be physical in nature...."). Accordingly, the knowledge and the violation must occur at the same time. This interpretation conforms to the general rule that the prohibited act and the specified mental state of a crime must concur. *See State v. Eich*, 204 Minn. 134, 282 N.W. 810, 814 (1938) ("[T]he prohibited act must concur with the specified intent."); 1 Charles E. Torcia, *Wharton's*

---

**2.** The State claims that the district court made a factual finding that Mikulak knowingly violated the predatory offender registration statute and that, therefore, we should review the validity of the guilty plea under the clearly erroneous standard. Because the district court made no such finding, we reject the State's argument.

*Criminal Law*, § 27 (15th ed. 1993) ("[A] crime consists in the concurrence of prohibited conduct and a culpable mental state."). This interpretation is also consistent with *Watkins*, in which we stated that "[t]he question of whether Watkins knowingly violated the ... statute turns on Watkins' knowledge that his conduct violated the [court order] *at the time of the offense*." 840 N.W.2d at 30 (emphasis added).[3] Our analysis in *Watkins* applies with equal force to the predatory-offender-registration statute.[4]

 Because knowledge of the law at the time of the violation is an element of the offense of knowingly violating a provision of the predatory-offender-registration statute, the court of appeals' reliance on the principle that ignorance of the law is no excuse was misplaced in this case.[5]

## II.

 Having clarified that a predatory offender must know of a requirement to violate Minn. Stat. § 243.166, subd. 5(a), we consider whether the statements that Mikulak made during his plea hearing negated the mens rea element of the charged offense.[6] During the hearing, Mikulak told

---

**3.** The State attempts to distinguish *Watkins* because that case involved a challenge to a jury instruction, rather than one to the validity of a guilty plea. The court of appeals concluded that *Watkins* was distinguishable because *Watkins* required the defendant to know the specific conduct prohibited by a court order, rather than the specific conduct prohibited by a statute. *State v. Mikulak*, No. A15-1701, 2016 WL 5888726, at *3 (Minn. App. Oct. 11, 2016). Even aside from the fact that nothing in *Watkins* suggests that either distinction matters, the key question presented in both cases is the state of mind of the defendant, not the legal source of the prohibition or the manner in which the legal challenge arises. *See Watkins*, 840 N.W.2d at 29-30.

**4.** The State also relies on Minn. Stat. § 609.02, subd. 9(2) (2016), which defines "know" as requiring "only that the actor believes that the specified fact exists." But even if this definition were applied, it would not support the State's position. Section 609.02, subdivision 9, uses the present tense—"believes"—which means that the defendant must have the mental state at the time the offense occurs. And here the "specified fact" that section 609.02, subdivision 9, requires the defendant to believe is that a statutory provision required him to register within 24 hours.

**5.** We agree with the dissent that ignorance of the law is generally not a defense. But as we recognized in *Watkins*, and now here, knowledge of the law is an element of an offense when the statute's text requires it. The dissent's reliance on Minn. Stat. § 609.02, subd. 9(5), is misplaced, because that subdivision is expressly limited to the criminal code. *See* Minn. Stat. § 609.02, subd. 9(1) ("When criminal intent is an element of a crime in this chapter, such intent is indicated by ... some form of the verbs 'know' or 'believe.' "). The best that can be said of the federal jurisprudence on which the dissent relies is that it is inconsistent. *Bryan* and *Bailey* are clear: the text of a statute controls. *Bryan v. United States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) ("[U]nless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." (footnote omitted)); *United States v. Bailey*, 444 U.S. 394, 408, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (upholding jury instructions requiring knowledge that the underlying criminal conduct was unauthorized); *see also Liparota v. United States*, 471 U.S. 419, 428-30, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (holding that "knowingly" required that the defendant knew his conduct was unauthorized). In *International Minerals* the Court held that knowledge of the law was not an element of an offense. *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 559, 565, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). But that case is inconsistent with the Court's later cases, *Bryan* and *Bailey*, and is distinguishable because of the inherent dangerousness of the regulated activity. *Id.*

**6.** We need not address Mikulak's alternative argument that the factual basis was inadequate because it did not establish that he no

the district court that upon arriving in Renville County, he did not register as a predatory offender because "[he] assumed [he] had a week, [he] didn't realize [he] had 24 hours." During further questioning by the district court, Mikulak agreed that it was "a fair statement" that he had been informed of the 24-hour registration requirement in the past. More specifically, Mikulak acknowledged that he had initialed a 2008 reporting form where it stated, "I understand that if I do not have a primary address I must report to the law enforcement authority with jurisdiction in the area where I will be staying within 24 hours of leaving my former primary address" (emphasis omitted) and "I understand that if I move to a new jurisdiction I must report to that law enforcement authority within 24 hours of entering the jurisdiction." The district court then asked Mikulak:

> ... Mr. Mikulak I'm looking right now at an example of a registration form, it looks like ... you signed [one] in December of 08 and what it says is that I understand that if I do not have a primary residence I must report to law enforcement authority [in] the jurisdiction [or] area where I will be staying within 24 hours of leaving my former primary residence and you initialed that and you would have resigned [sic] that a number of times, but are you satisfied now after having discussed the case with [defense counsel] that your understanding seven days doesn't relate to this situation?

Mikulak responded, "Yeah, now I am."

Based on the record, we conclude that Mikulak made statements, never withdrawn or corrected, that negated the mens

rea element of the charged offense. We view Mikulak's statement, "Yeah, now I am," as a response to whether *at the time of the plea hearing* he understood that he did not have 7 days to register. Such a view is supported by the fact that throughout the plea hearing, Mikulak consistently stated that he did not know that he was required to register within 24 hours of entering Renville County, making statements like "I just don't remember what I signed" and affirming that "at the time you moved down [to Renville County you] didn't remember that that's what you were told." Because these statements negated the mens rea element of the charged offense, the factual basis fails to satisfy the accuracy requirement.

In sum, the court of appeals' reliance on the principle that ignorance of the law is no excuse was misplaced because knowledge of the law is an element of the offense of knowingly violating a provision of the predatory-offender-registration statute. Moreover, Mikulak's factual basis fails to satisfy the accuracy requirement for a valid plea because Mikulak made statements that were not withdrawn or corrected and that negated the mens rea element of the charged offense.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

Dissenting, McKeig, J.

---

longer resided at the St. Cloud address. Even assuming without deciding that Mikulak violated the predatory-offender-registration statute by becoming homeless and failing to reg-

ister within 24 hours of entering Renville County, we conclude that the factual basis was inadequate because it failed to establish that he *knowingly* did so.

## DISSENT

MCKEIG, Justice (dissenting).

Juanel Anthony Mikulak was convicted of an offense requiring predatory-offender registration under Minn. Stat. § 243.166, subd. 5(a) (2016). He admits that he signed several notices informing him of his obligation to register with local law enforcement within 24 hours of leaving his primary residence without a new primary address. *See id.*, subd. 3a. And he concedes that he failed to fulfill this obligation. The majority nonetheless holds that Mikulak may withdraw his plea of guilty to "knowingly violat[ing]" the registration requirement, *id.*, subd. 5(a), because he claims that he did not recall his responsibility under the law at the time of the offense. The majority's decision essentially means that a predatory offender has no responsibility to reference registration requirements before moving, and can avoid them altogether through forgetfulness. Because the court's interpretation of the phrase "knowingly violates," both here and in its previous decision in *State v. Watkins*, 840 N.W.2d 21, 29-31 (Minn. 2013), is contrary to the Legislature's intent as well as longstanding common law, I respectfully dissent.

### I.

I agree with the majority that we have already interpreted the phrase "knowingly violates" in *Watkins*, 840 N.W.2d at 29-31. But, like Justice Page, I believe that the court's interpretation was erroneous. *See id.* at 31-33 (Page, J., dissenting).[1] In *Watkins*, we held that "the phrase 'knowingly violates this subdivision' ... require[s] the defendant to perceive directly" that his actions violated the statute. *Id.* at 29. We recognized that "[g]enerally, a mistake of the law is not a defense." *Id.* at 30. But we relied on our decision in *State v. Jacobson*, 697 N.W.2d 610 (Minn. 2005), to hold that the phrase "knowingly violates" requires an intent to violate the statute, and thus allows for a mistake-of-law defense. *Watkins*, 840 N.W.2d at 30.

The court's reliance on *Jacobson* was misguided. *Jacobson* involved a conspiracy offense, which requires proof of a "conscious and intentional purpose to break the law." 697 N.W.2d at 616 (quoting *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001)). Thus, the mens rea element at issue in *Jacobson* made crystal clear that a defendant must intend to break the law; indeed, the essence of conspiracy is planning for the commission of a crime. *Id.* at 615 (stating that "conspiracy occurs when one conspires with another to commit a crime" (citation and internal quotation marks omitted)).

By contrast, the language at issue both here and in *Watkins*—"knowingly violates"—does not clearly require a defendant to intend to break the law. A reasonable person could just as easily conclude that the plain language of these statutes requires only that the defendant knowingly perform the act or omission that violates the law. And, reading the predatory-offender-registration statute at issue here in light of (1) the legislative purpose for it and the surrounding provisions within it, (2) the definition of "know" in analogous criminal chapters, and (3) longstanding

---

1. I recognize that "stare decisis directs that we adhere to former decisions in order that there might be stability in the law." *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn. 2000). But "stare decisis does not bind us to unsound principles." *Id.* Rather, "[t]he mere fact that an error has been committed is no reason or even apology for repeating it, much less[ ] for perpetuating it." *Id.* (citation and internal quotation marks omitted). Because I believe an error was committed in our previous interpretation of the phrase "knowingly violates," I suggest that we refrain from perpetuating it here.

common-law interpretations of the terms "know" and "knowingly violates," this becomes the *only* reasonable conclusion.

### A.

The plain language of the predatory-offender-registration statute and its enabling act establishes the Legislature's intent to hold the offender accountable for knowing and following the registration requirements. "Our objective in statutory interpretation is to effectuate the intent of the legislature, reading the statute as a whole." *In re Reichmann Land & Cattle, LLP*, 867 N.W.2d 502, 509 (Minn. 2015) (citation and internal quotation marks omitted). In enacting the predatory-offender-registration statute, the Legislature expressed its intent to "requir[e] certain convicted sex and kidnapping offenders to report a current address to [their] probation officer following release from prison." Act of June 1, 1991, ch. 285, 1991 Minn. Laws 1324, 1324. The current statute also references the "public safety objectives of this section." Minn. Stat. § 243.166, subd. 3a(f)(2). Thus, the intent of the Legislature was to place a duty upon predatory offenders to report their location to law enforcement to protect public safety.

The statute is long and complex, providing for different registration and timing requirements under various circumstances. *See generally* Minn. Stat. § 243.166. To ensure that offenders understand their responsibilities, the statute requires the court to "tell the person of the duty to register under this section" and to have them "read and sign a form stating that the duty of the person to register under

this section has been explained." *Id.*, subd. 2. The Legislature then penalizes "[a] person required to register under this section who knowingly violates any of its provisions." *Id.*, subd. 5a.

The majority's contention that the phrase "knowingly violates" requires the offender to intend to violate the law, and that an offender may therefore claim ignorance of the law as an excuse, is inconsistent with the Legislature's public-safety purpose and renders the notice requirements of the statute meaningless. Under the majority's interpretation, the statute's requirements that the district court inform the offender of his personal duty and have him sign an acknowledgement of it ultimately fails to protect public safety as intended, because the offender may simply let his duty slip from his mind forever and avoid any penalty. Such a result is unreasonable and cannot have been intended by the Legislature. Rather, examining the penalty provision in subdivision 5a alongside the Legislature's purpose and the surrounding provisions, a reasonable person would conclude that the Legislature intended "knowingly violates" to refer to an offender's knowledge that he has done the act or omission that violates the registration requirements.[2]

### B.

The Legislature's definition of "know" in an analogous criminal chapter also supports my interpretation of "knowingly violates." The predatory-offender-registration statute does not define the term "knowingly." But the Legislature has defined forms of the word "know"—which, it explains, is

---

**2.** At the very least, even assuming that "knowingly violates" requires specific knowledge that one is violating the registration statute as the majority contends, a reasonable person reading the statute as a whole would find that this knowledge requirement is intended to be fulfilled by the notice provisions in subdivision 2. Thus, a defendant only unknowingly violates the statute if the court fails to inform a defendant of his or her registration requirements.

a form of criminal intent—for purposes of the criminal code. Minn. Stat. § 609.02, subd. 9 (2016). There is no reason for us to assume that the Legislature intends "knowingly" to have an entirely different meaning in chapter 243.

Section 609.02, subdivision 9 defines "know" as requiring "*only* that the actor believes that the specified *fact* exists." *Id.*, subd. 9(2) (emphasis added). The majority argues that this language supports its interpretation because the "specified fact" in the predatory-offender-registration statute is the violation of the law. But later in this statutory provision, the Legislature made clear that "[c]riminal intent *does not* require proof of knowledge of the existence ... of the statute under which the actor is prosecuted or the scope or meaning of the terms used in that statute." *Id.*, subd. 9(5) (emphasis added). Accordingly, the Legislature has expressed its intent that the word "know," when used in the context of criminal intent, does not require the defendant to know that he is violating the law. Instead, it requires only that the defendant know that he is committing the act which constitutes the violation.

The majority argues that Minn. Stat. § 609.02, subd. 9(5), is "specifically limited to the criminal code." *Supra* at 604 n.5. This is incorrect. The provisions of chapter 609 apply to all crimes created by statute. Minn. Stat. § 609.015 (2016). Minnesota Statutes § 609.02 thus applies to the criminal penalties established by Minn. Stat. § 234.166, subd. 5.[3]

### C.

Finally, the interpretation of "knowingly violates" that I propose here is supported by longstanding common law, as Justice Page recognized in his *Watkins* dissent, 840 N.W.2d at 32-33 (Page, J., dissenting). "[T]his court has long followed the presumption that statutory enactments are consistent with common law doctrines." *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 570 (Minn. 1994). The common law makes two principles clear: (1) ignorance of the law is not a defense absent a statute requiring a specific intent to violate the law, and (2) the phrase "knowingly violates" does not carry a specific intent to violate the law absent a legislative statement to the contrary.

As we recognized in *Watkins*, it is well-established that "a mistake of the law is not a defense" unless "the elements of the offense require an intent to violate a statute." 840 N.W.2d at 30. We have also recognized that a "general-intent crime only requires proof that the defendant intended to do the physical act forbidden, without proof that [she] meant to or knew that [she] would violate the law or cause a particular result." *State v. Dorn*, 887 N.W.2d 826, 830 (Minn. 2016) (alterations in original) (citations and internal quotation marks omitted); *see, e.g., id.* at 830-31 (holding that a statute requiring the "intentional infliction" of bodily harm requires only the "general intent to do the act that results in bodily harm"). But in *Watkins*, we incorrectly determined that "knowingly violates" goes beyond general intent, instead requiring a specific intent to violate a statute. 840 N.W.2d at 30.

The United States Supreme Court has explained that " 'knowledge' corresponds loosely with the concept of general intent," and thus a requirement that a de-

---

**3.** Many statutes outside of chapter 609 reference Minn. Stat. § 609.02 as well. *See, e.g.,* Minn. Stat. § 181A.12 (2016) (using same definition of "substantial bodily harm"); Minn. Stat. § 241.272 (2016) (using same definition of "probation"); Minn. Stat. § 245C.02 (2016) (using same definition of "conviction"); Minn. Stat. § 347.50 (2016) (using same definitions of "substantial bodily harm" and "great bodily harm").

fendant "knowingly" commit a crime is satisfied if the defendant knew that he engaged in the act that violated the law, absent evidence of contrary legislative intent. *United States v. Bailey*, 444 U.S. 394, 405, 408, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). Consistent with this principle, the Court has held that a statute punishing one who "knowingly violates" a regulation does not "abandon[ ] the general rule" that "ignorance of the law is no defense." *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 562-63, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). In *International Minerals*, the Court examined legislative history showing that Congress considered removing the word "knowingly," but nonetheless "decline[d] to attribute to Congress the inaccurate view that that Act requires proof of knowledge of the law, as well as the facts." *Id.* More recently, the Court has affirmed that "the term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law," but rather "the knowledge requisite to knowing violation of a statute is *factual knowledge.*" *Bryan v. United States*, 524 U.S. 184, 192, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (emphasis added) (citation and internal quotation marks omitted).

The common law establishes that forms of the word "know," and specifically the phrase "knowingly violates," generally do not require a specific intent to violate the law. Here, the Legislature has done nothing to indicate its intent to override this longstanding principle. Thus, the common-law presumption that "a mistake of the law is not a defense," *Watkins*, 840 N.W.2d at 30, must be upheld. *See State by Beaulieu*, 518 N.W.2d at 570 ("If a statutory enactment is to abrogate common law, the abrogation must be by express wording or necessary implication.").

II.

The majority's interpretation of the phrase "knowingly violates" defies the Legislature's intent, allowing predatory offenders such as Mikulak to escape liability through ignorance of registration duties for which they pledged responsibility, and ultimately compromising public safety. Accordingly, I respectfully dissent.