*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1628**

State of Minnesota,
Respondent,

vs.

Gary Wayne Smith,
Appellant.

**Filed September 2, 2025
Affirmed
Halbrooks, Judge***

Beltrami County District Court
File No. 04-CR-23-2175

Keith Ellison, Attorney General, St. Paul, Minnesota; and

David L. Hanson, Beltrami County Attorney, David P. Frank, Chief Assistant County Attorney, Bemidji, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Erik I. Withall, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Wheelock, Presiding Judge; Frisch, Chief Judge; and

Halbrooks, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**HALBROOKS**, Judge

In this direct appeal from the final judgment of conviction of failure to register as a predatory offender, appellant seeks to withdraw his guilty plea to correct a manifest injustice, arguing that the factual basis of his plea was inaccurate and negated an essential element of the offense. Because we conclude that appellant's plea colloquy adequately established his guilt, we affirm.

**FACTS**

In August 2023, respondent State of Minnesota charged appellant Gary Wayne Smith with failure to register as a predatory offender in violation of Minn. Stat. § 243.166, subd. 5(a)(1), (b) (2022). The charge arose after Smith, a homeless registrant, stopped completing his statutorily required weekly check-in reports with law enforcement, despite reminders from law enforcement to do so. Smith's registering and reporting requirements began in 2016, and he had reported routinely until July 2023. After Smith failed to report for a few weeks, law enforcement arrested him on a warrant.

Smith pleaded guilty to the charged offense.[1] At a sentencing hearing, the district court accepted Smith's guilty plea and sentenced him to 26 months in prison with credit for 345 days' time served.

This appeal follows.

---

[1] As part of the plea agreement, Smith also entered guilty pleas for two separate theft counts that are not challenged on appeal.

**DECISION**

Smith seeks to withdraw his guilty plea on the ground that the factual basis of his plea was inaccurate and negated an essential element to prove his guilt. Specifically, Smith argues that because he testified that "he had daily in-person contacts with local law enforcement where they discussed his registration obligation," his plea negated his guilt of the statute's weekly in-person reporting element. *See* Minn. Stat. § 243.166, subd. 3a(e) (2022).

"Once a guilty plea has been entered, there is no absolute right to withdraw it." *State v. Mikulak*, 903 N.W.2d 600, 603 (Minn. 2017). Rather, a court "must allow a defendant to withdraw a guilty plea" after sentencing only when the defendant establishes "that withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid. To be constitutionally valid, a guilty plea must be accurate . . . ." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010) (citation omitted).

A plea is accurate if an adequate factual basis is established on the record, meaning that "facts exist from which the defendant's guilt of the crime charged can be reasonably inferred." *Nelson v. State*, 880 N.W.2d 852, 859, 861 (Minn. 2016) (quotation omitted). But "a factual basis is inadequate when the defendant makes statements that negate an essential element of the charged crime because such statements are inconsistent with a plea of guilty." *Mikulak*, 903 N.W.2d at 603 (quotation omitted). We "must examine a defendant's admissions in light of all surrounding circumstances and in the context of an

entire plea colloquy." *State v. Jones*, 7 N.W.3d 391, 396 (Minn. 2024) (quotation omitted). Plea validity is a question of law that we review de novo. *Nelson*, 880 N.W.2d at 858.

The relevant language of the predatory-offender-registration statute provides:

> (c) A person who lacks a primary address shall register with the law enforcement authority that has jurisdiction in the area where the person is staying within 24 hours after entering the jurisdiction. Each time a person who lacks a primary address moves to a new jurisdiction without acquiring a new primary address, the person shall register with the law enforcement authority that has jurisdiction in the area where the person is staying within 24 hours after entering the jurisdiction.

> . . . .

> (e) Except as otherwise provided in paragraph (f), *if a person continues to lack a primary address, the person shall report in person on a weekly basis to the law enforcement authority with jurisdiction in the area where the person is staying. This weekly report shall occur between the hours of 9:00 a.m. and 5:00 p.m.* The person is not required to provide the registration information required under subdivision 4a each time the offender reports to an authority, but *the person shall inform the authority of changes to any information provided under this subdivision or subdivision 4a* and shall otherwise comply with this subdivision.

Minn. Stat. § 243.166, subd. 3a(c), (e) (2022) (emphasis added).

During the plea hearing, Smith affirmed that he had a "sufficient amount of time to speak with" his attorney and that he was "satisfied with [his attorney's] representation." Smith also agreed that he was "waiving [his] right to a trial," and he was "entering this [guilty plea] freely and voluntarily." Prior to establishing the factual basis, the district court confirmed with Smith's attorney that the plea would be "in [Smith's] own words,"

4

with guidance from Smith's attorney at "various points" to cover the statute's technicalities.

The factual-basis portion of the plea colloquy followed. Smith testified that he was required to register as a predatory offender for ten years after his release from prison in 2016 and that he had a registering and reporting obligation on the date of the offense. Smith also testified that he had registered "quite a few times since [he] got out in 2016." Smith, Smith's counsel, and the district court then had the following exchanges:

> DEFENSE: But on [August 9, 2023], did you register your updated address?
>
> SMITH: No, I didn't. I was—I didn't register. I mean, I go down and sign the papers across the street at the court—I mean at the jail there—or the police station. And the last time I did was in June or July, and then I was homeless. And I skipped a few times because you're supposed to go in like every week, I guess. You know, so it wasn't like once a month because we— you know, when I was living with somebody—with my girlfriend, we had a place in Ridgeway and got kicked out. And then I had to start going up there every week. So, the last time I think was in July, pretty sure.
>
> And then I was going to court up here for them theft charges in August. And they seen me at the gas station at 6:30 or so in the morning walking down here, and they said I had a warrant for—I didn't register—or I didn't come in, you know, to update whatever—
>
> . . . .
>
> DEFENSE: . . . And so you just indicated, Mr. Smith, that you skipped a few times. So that meant you didn't register as required by law; correct?
>
> SMITH: Yeah, I guess so. Yeah.

5

DEFENSE: And so you're not claiming innocence and you are indicating that you are guilty, in fact, of that failure to register?

SMITH: Yeah, I guess. Yes, that's what I'm saying.

. . . .

COURT: All right. And, Mr. Smith, probably feels repetitive but you told your lawyer you knew, when you were homeless, you had to check in weekly across the street at the police station; is that right?

SMITH: Yeah, yeah. But, like, I seen this lady cop a lot, you know, on the street because they see me like every day in the neighborhood, you know? I mean, it wasn't like I was running off or anything like that, you know? I mean, they even said it in the police report; they'd seen me on a daily basis. You know, and they would stop me and tell me, you know, "Hey, Gary. You got to go down to the station, you know, and let them know what's going on with you," and stuff.

You know, so I go down there, and . . . like, me and my girl, . . . we didn't have no place to stay. . . . [W]e were trying to figure out when to go and times to eat at different places, you know, churches and stuff . . . . And it just kind of like slipped my mind . . . for a little bit.

And then, . . . they finally put the warrant out on me, I guess, after I didn't go in for a month. And then that's when they arrested me on this.

COURT: All right. And so, you do agree that you are guilty of this offense?

SMITH: Yeah.

Looking at the totality of Smith's plea colloquy, it is apparent that Smith knew the registering and reporting requirements, had followed them successfully in the past, and had "slipped" on his obligation to do so for a few weeks. It is also clear that Smith's comment about interacting with law enforcement was not intended to establish his satisfaction of the

6

statute's reporting requirements. Rather, Smith was simply stating that law-enforcement officers knew him and would remind him of his obligation to go report. Smith himself did not view these interactions as meeting his reporting obligations.

In support of his argument that he should be permitted to withdraw his guilty plea, Smith seeks to analogize his case with *Mikulak*, 903 N.W.2d at 602-05, and *Jones*, 7 N.W.3d at 394-99. But these cases are distinguishable.

In *Mikulak*, the defendant, after moving from his primary address, failed to register with the law-enforcement authority in his new jurisdiction within 24 hours, as required by the statute. 903 N.W.2d at 602 (citing Minn. Stat. § 243.155, subd. 3a(a), (c) (2016)). At his plea hearing, Mikulak pleaded guilty but testified that he thought he had one week, rather than 24 hours, to register in his new jurisdiction. *Id.* The Minnesota Supreme Court reversed Mikulak's conviction, determining that Mikulak's guilty plea failed the accuracy requirement because he did not *knowingly* fail to register within the 24-hour registration period. *Id.* at 605.

Here, Smith testified clearly that he knew of the weekly in-person reporting requirements, and he acknowledged that he had not completed these requirements since July because he "skipped a few times" and it "slipped [his] mind." And Smith's subsequent comment about his daily interactions with law enforcement does not reasonably suggest that he was retracting his previous statements that outlined his understanding of the reporting requirements. Thus, unlike *Mikulak*, Smith's knowledge of the reporting requirements was not negated by his statements.

In *Jones*, the defendant pleaded guilty to third-degree criminal sexual conduct by responding to his counsel's leading questions. 7 N.W.3d at 394, 398. When questioned about whether he understood that future charges against him may be enhanced, Jones made a comment that he "never raped [his] baby momma." *Id.* at 394 (emphasis omitted). This statement was not clarified, rehabilitated, or addressed by the district court or the attorneys. *Id.* Then, at the sentencing hearing, Jones again made a similar comment, saying he "did not do that to [his] babies' mom." *Id.* at 395.

On appeal, Jones argued that his guilty plea was inaccurate and he was entitled to withdrawal. *Id.* The Minnesota Supreme Court agreed, determining that Jones's comments "effectively asserted that he did not commit third-degree criminal sexual conduct" and that "Jones's affirmative responses to *exclusively* leading questions were not sufficient to rehabilitate his plea after he asserted his innocence." *Id.* at 397-98. But unlike *Jones*, Smith's guilty plea was based largely on his own admissions of guilt and clearly established his failure to comply with the reporting requirements. And Smith's single comment at the end of his plea colloquy about interacting with law enforcement in the community, who reminded Smith to complete his reporting obligation, does not "effectively assert[]" Smith's compliance with the statute's reporting requirements.[2]

---

[2] We also note that Smith's plea colloquy does not establish compliance with the statute's other reporting requirements. His statements do not reflect that he affirmatively "reported" anything to law enforcement during the interactions. *See* Minn. Stat. § 243.166, subd. 3a(e). And even if it we broadly construed his interactions as a "report," there is no evidence that he reported between 9 a.m. and 5 p.m. *See id.*

Smith also raises a statutory interpretation argument about the statute's phrase, "the person shall *report* in-person on a weekly basis to the law enforcement authority with jurisdiction in the area where the person is staying." Minn. Stat. § 243.166, subd. 3a(e) (emphasis added). Because "report" is not defined by the statute, Smith asserts that the phrase can be interpreted to mean that an offender can also "satisfy their in-person reporting requirement by making contact with local law enforcement who are aware of the registrant's obligation and homeless status." But we do not need to reach the issues of where and to whom reporting must occur in this case because the facts establish that Smith understood the reporting requirements, having successfully reported "quite a few times" before he lapsed in July 2023. Further, it is clear from Smith's plea colloquy that he knew that he was not satisfying the reporting requirements by having these casual interactions with law enforcement in the community.

We therefore conclude that because Smith entered an accurate guilty plea, he is not entitled to plea withdrawal.

**Affirmed.**